**CMMC, Petitioner,**

v.

**Ambrocio SALINAS, Respondent.**

No. 95–0954.

Supreme Court of Texas.

Argued Jan. 16, 1996.

Decided July 12, 1996.

Rehearing Overruled Oct. 18, 1996.

Michael W. Eady, Austin, for Petitioner.

William W. McNeal, Lockhart, for Respondent.

HECHT, Justice, delivered the opinion for a unanimous Court.

The sole question in this case is whether the Fourteenth Amendment permits a state court to take personal jurisdiction over a foreign manufacturer merely because it knew its allegedly defective product would be shipped to that state. We answer no, and thus reverse the judgment of the court of appeals, 903 S.W.2d 138, and affirm the judgment of the trial court.

Hill Country Cellars, a small winery located in Cedar Park, Texas, ordered a winepress from KLR Machines, Incorporated, an independent distributor of equipment used in the wine and juice industries. KLR, in turn, ordered the winepress for Hill Country Cellars from CMMC, a French manufacturer, instructing CMMC to wire the press for electrical use in the United States. KLR quoted the price to Hill Country Cellars in deutch marks, although it would accept payment in U.S. dollars at the current exchange rate. KLR instructed CMMC to arrange with A. Germaine, a freight forwarder paid by KLR, to transport the press from the CMMC's factory in Chalonnes, France, to the ship on which it would travel to the United States, and to arrange for the press to be shipped FOB the port of Houston. CMMC complied and thus knew that the destination of the press was Texas. Hill Country Cellars took title to the winepress in Houston and paid for transportation to its winery. Shortly after it began to use the press, Hill Country Cellars made a warranty claim to KLR. KLR satisfied the claim by having an electrical motor rewound for proper use in the United States, for which it paid $529.57. KLR in turn presented the claim to CMMC, which agreed to credit KLR.

CMMC, a French corporation owned since 1986 by a German manufacturer, sells wine production equipment primarily in Europe. It does not directly market or advertise its equipment in the United States, other than by providing promotional materials to KLR. A buyer may acquire products from CMMC directly or through KLR. CMMC and KLR have no contractual arrangement and share no employees. KLR advertises CMMC products, but CMMC does not specifically authorize or approve the ads. CMMC has sold equipment in the United States, including a direct sale to another winery in Texas. CMMC has never had a place of business, distributor, or representative in Texas, or any other contacts with Texas. Hill Country

Cellars never had any direct contact with CMMC.

KLR, a New York corporation with offices in Sebastopol, California, and Bath, New York, has never had offices or employees in Texas. In the ten years preceding this case it made only three or four equipment sales in Texas. It has never had any other contacts with Texas. KLR sells the equipment of numerous manufacturers, only one of which is CMMC. KLR directs its marketing efforts primarily toward California but also advertises in nationally circulated wine industry magazines. KLR advertisements have never pictured the particular press Hill Country Cellars purchased, although it was a KLR ad that led to the sale to Hill Country Cellars.

Ambrocio Salinas, a Hill Country Cellars employee, injured his arm while cleaning the press and filed this lawsuit for damages against CMMC, asserting strict product liability and negligence claims. The district court sustained CMMC's special appearance and dismissed the case for want of personal jurisdiction. The court of appeals reversed and remanded, holding that a Texas court's assertion of personal jurisdiction over CMMC could be based solely on CMMC's knowledge that the winepress would be shipped to Texas, and that this assertion would not offend traditional notions of fair play and substantial justice. 903 S.W.2d 138, 142–145.

■ We have so frequently and so recently reiterated the constitutional standards for determining personal jurisdiction that we need not restate them yet again here. *CSR Ltd. v. Link,* 925 S.W.2d 591 (Tex.1996); *National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995); *In re S.A.V.,* 837 S.W.2d 80, 85–86 (Tex.1992); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226–228 (Tex. 1991); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663–664 (Tex. 1987). Our polestar must be, of course, the United States Supreme Court. *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopte-*

*ros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Suffice it to say that the rule in these cases is that a state court can take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

CMMC's only contacts with Texas are that it made isolated sales of equipment to customers here, and that it knew the machine it sold KLR was being shipped here. Salinas argues, and the court of appeals agreed, that CMMC's release of its winepress into the stream of commerce with knowledge of the intended destination is sufficient to subject it to personal jurisdiction under our decisions in *Keen v. Ashot Ashkelon, Ltd.,* 748 S.W.2d 91 (Tex.1988), and *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199 (Tex.1985)(per curiam), which follow the rule of *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 286, 100 S.Ct. at 561–562, and *Asahi Metal Industry v. Superior Court,* 480 U.S. at 102, 107 S.Ct. at 1026–1027.

In *World–Wide Volkswagen,* the United States Supreme Court stated a basis for personal jurisdiction that has come to be referred to as the stream-of-commerce doctrine:

[I]f the sale of a product of a manufacturer or a distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World-Wide Volkswagen,* 444 U.S. at 297–298, 100 S.Ct. at 567. Applying this rule, the Court held that a car distributor and a retail dealer, both doing business in New York, did not have minimum contacts with Oklahoma simply because cars they sold ended up in that state.

Seven years later, the Court was unable to agree on the scope of the rule stated in *World–Wide Volkswagen.* In *Asahi,* a motorcyclist filed suit in a California court to recover damages for personal injuries. Settlements among the parties left pending only a cross-claim between two defendants: a claim for indemnity by a Taiwanese tire tube manufacturer, Cheng Shin Rubber Industrial Company, against a Japanese manufacturer of the tube's valve assembly, Asahi Metal Industry Company. Cheng Shin argued that the state court had jurisdiction over Asahi because Asahi was aware that its valve assemblies sold to Cheng Shin and others would be incorporated in their products and would end up in the United States, generally, and in California, in particular. Asahi did not design its products specifically for use in California and did not attempt to market them there. Asahi had no other contacts with California.

Justice O'Connor, writing for a four-Member plurality, concluded that Asahi did not have sufficient contacts with California to be subject to personal jurisdiction in state court. Asahi's mere awareness that its products might end up in California was not enough to show that it purposely availed itself of the California market. Regarding the stream-of-commerce doctrine of *World–Wide Volkswagen,* Justice O'Connor explained:

> Since *World–Wide Volkswagen,* lower courts have been confronted with cases in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum State, but the defendant did nothing else to purposefully avail itself of the market in the forum State. Some courts have understood the Due Process Clause, as interpreted in *World–Wide Volkswagen,* to allow an exercise of personal jurisdiction to be based on no more than the defendant's act of placing the product in the stream of commerce. Other courts have understood the Due Process Clause and the above-quoted language in *World–Wide Volkswagen* to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.

> *     *     *     *     *     *

> We now find this latter position to be consonant with the requirements of due process. The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi,* 480 U.S. at 110–112, 107 S.Ct. at 1031–1032 (citations omitted). Justice Brennan expressed the opposing view:

> I see no need for [a showing of additional conduct directed toward the forum]. The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in *this process* is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the

stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State. Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct.

*Asahi,* 480 U.S. at 117, 107 S.Ct. at 1034–1035 (Brennan, J., concurring in part)(emphasis added, footnote omitted).

Even if a defendant has substantial contacts with a state, the state court cannot exercise personal jurisdiction over the defendant if to do so would offend traditional notions of fairness. In *Asahi,* the Supreme Court was unanimous in holding that it was unfair to subject Asahi to the jurisdiction of a California court.

■ For now, we need not take sides in the *Asahi* debate over the stream-of-commerce doctrine because of the difference in the factual circumstances of that case and the one now before us. Asahi's products were regularly sold in California, although not by Asahi. CMMC's wine-producing equipment did not regularly find its way to Texas. Neither CMMC nor KLR made any effort to market CMMC's equipment in Texas, other than by advertisements in magazines with national circulation. Hill Country Cellars' purchase was an isolated event. KLR did not contact Hill Country Cellars; Hill Country Cellars contacted KLR. Hill Country Cellars never had any contacts at all with CMMC. CMMC's mere knowledge that its winepress was to be sold and used in Texas and its wiring the machine for use in the United States were not sufficient to subject CMMC to the jurisdiction of Texas courts. This evidence simply does not show that CMMC designed products for use in Texas, or that it made any effort to market them here, or that it took any other action to purposely avail itself of this market. Even

Justice Brennan's view of the stream-of-commerce doctrine would not allow jurisdiction absent a "regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* There is no flow of products from CMMC to Texas; there is scarcely a dribble.

■ The court of appeals cited two Fifth Circuit cases recognizing that even one act by a defendant can support jurisdiction. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 419 (5th Cir.1993); *Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 385 (5th Cir.1989), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49. Still, that act must be purposefully directed at the forum state so that the defendant could foresee being haled into court there. *See, e.g., Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–2184; *World–Wide Volkswagen,* 444 U.S. at 297–298, 100 S.Ct. at 567–568; *Ruston,* 9 F.3d at 419; *Irving,* 864 F.2d at 385–386. Single or even occasional acts are not sufficient to support jurisdiction if, as here, " 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum". *Burger King,* 471 U.S. at 475, n. 18, 105 S.Ct. at 2184, n. 18 (citing *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159).

This Court has followed the United States Supreme Court's stream-of-commerce rule, as of course we must. In *Kawasaki,* we held that a foreign steel manufacturer that confirmed orders for millions of dollars of steel annually to be shipped to Texas consumers had sufficient contacts to be subject to suit here. 699 S.W.2d at 201. The result would have been the same under either of the views expressed in *Asahi.* We cited *Kawasaki* and *Asahi* in *Keen,* stating: "A defendant's delivering of its product into the stream of commerce with the expectation that the product will enter the forum state will ordinarily satisfy the due process requirement of minimum contacts so as to afford that state personal jurisdiction over the defendant." *Keen,* 748 S.W.2d at 93. We did not by this one sentence extend the reach of Texas jurisdiction beyond that allowed by *World–Wide Volkswagen,* or even beyond that which Justice Brennan would have allowed in *Asahi.* Indeed, we could not have done so even if we

had wanted to, bound as we are in this area by the decisions of the United States Supreme Court. To the contrary, we cited Justice O'Connor's plurality opinion twice and did not mention Justice Brennan's concurring opinion. If anything, *Keen* suggests that we would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas.

It is neither unfair nor unjust to require Salinas to litigate his disputes with CMMC at CMMC's place of business when neither he nor his employer ever had any contact whatever with CMMC in Texas. A manufacturer cannot fairly be expected to litigate in every part of the world where its products may end up; its contacts with the forum must be more purposeful, even in Justice Brennan's view, before it can constitutionally be subjected to personal jurisdiction. As we recently stated, echoing *Burger King Corp. v. Rudzewicz,* "[a] defendant should not be subject to the jurisdiction of a foreign court based upon 'random,' 'fortuitous,' or 'attenuated' contacts." *CSR,* 925 S.W.2d at 594 (quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). "Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system." *Id.* at 595. Here, those contacts are missing.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the district court dismissing CMMC is affirmed.