## H. HELLER & CO., INC. and Gulf Performance Polymers, Inc., Appellants,

v.

## LOUISIANA–PACIFIC CORP., Appellee.

No. 14–06–00481–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 7, 2006.

---

Rachel Michelle Stanford, Gregory M. Cokinos, Robert A. Plessala, Houston, for appellants.

George R. Murphy, Sabrina L. DiMichele, Houston, J. Greg Dow, Humble, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## MAJORITY OPINION

ADELE HEDGES, Chief Justice.

Appellants, H. Heller & Co., Inc. and Gulf Performance Polymers, Inc., appeal from the denial of their plea to the jurisdiction. In the court below, Louisiana–Pacific filed for enforcement of an Alabama judgment against appellants. On appeal, appellants contend that the trial court erred in denying their plea to the jurisdiction because the Alabama court issuing the original judgment did not have personal jurisdiction over them. We affirm.

### Background

Appellants manufacture high-density polyethylene, or HDPE, a thermoplastic made from petroleum. In 2000, LP purchased three shipments of HDPE from appellants for use in the manufacture of an engineered-wood decking material. Each shipment was comprised of two rail-car loads sent from appellants' facility in Channelview, Texas, to LP's facility in Selma, Alabama.

In its Alabama lawsuit, LP alleged that the third shipment of HDPE from appellants failed to meet contract specifications. LP further alleged that the sub-standard quality of appellant's product resulted in a sub-standard batch of decking material, which had to be scrapped. According to LP, appellants subsequently declined to refund LP's payment or replace the deficient product. LP pleaded causes of action for breach of contract, breach of warranty, fraud/misrepresentation, conversion,

and unjust enrichment. Appellants failed to answer in the Alabama lawsuit. Consequently, on May 11, 2004, the Alabama trial court entered a default judgment awarding LP $199,494 in damages and interest.

In the court below, appellants acknowledged making the sales to LP but contended that LP initiated the contact that resulted in the sales and that neither of the appellants solicited business in Alabama or sent personnel to Alabama related to the sales. They further alleged that they did not maintain offices in Alabama, did not have an agent for service of process in Alabama, did not have salespeople in Alabama or make routine sales there, did not advertise in Alabama, and did not have bank accounts or own property in the state. Appellants asserted that LP representatives traveled to Texas to inspect the product and traveled to New York to discuss the sale, but at no time did any representative of appellants travel to Alabama in conjunction with the sale. They further contended that pursuant to the terms of the shipment contract, ownership and risk of loss of the HDPE transferred to LP when the product was loaded on railcars in Channelview, Texas.

In an affidavit attached to LP's response, Greg Stogner, an LP manager, stated that appellants' initial contact with the company was through a former LP employee who worked at its Selma, Alabama facility. Prior to sending the allegedly defective shipment, appellants had sold and shipped at least four other railcars of HDPE to LP in Selma. The purchase order for each shipment stated that the product would be shipped to Selma, Alabama. Appellants selected and paid for the rail carrier to deliver the product to Selma. Furthermore, in negotiating the sale, LP required that the HDPE have a certain nominal melt index, and appellants

certified that their product met this specification.

LP's original enforcement action, filed in the court below on July 19, 2005, appears to have been based on common law principles of foreign judgment enforcement. However, on December 6, 2005, LP subsequently amended their pleadings pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA). TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001–.008 (Vernon 1997 & Supp.2006). Under the UEFJA, the very filing of a foreign judgment in a Texas court constitutes both an original petition and a final judgment, automatically creating a final Texas judgment. *Moncrief v. Harvey*, 805 S.W.2d 20, 22 (Tex. App.-Dallas 1991, no writ). A challenge to the enforcement of a foreign judgment operates as a motion for new trial. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 485 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). As mentioned, appellants challenged enforcement of the Alabama action by filing a plea to the jurisdiction, which the trial court denied.

### *Legal Underpinnings*

 In their sole issue on appeal, appellants contend that the trial court erred in denying their plea to the jurisdiction because the Alabama court that issued the original judgment did not have personal jurisdiction over them. Under constitutional principles of federalism and comity, full faith and credit must be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1; 28 U.S.C. § 1738. Accordingly, Texas is required to enforce a valid judgment presented from another state. *See Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992). The party seeking to enforce a foreign judgment has the initial burden to

present a judgment that appears on its face to be a final, valid, and subsisting judgment. *Mindis Metals*, 132 S.W.3d at 484. When a judgment creditor files an authenticated copy of a foreign judgment pursuant to the UEFJA, a prima facie case for its enforcement is presented. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex.1975); *Mindis Metals*, 132 S.W.3d at 484. The burden then shifts to the judgment debtor to prove by clear and convincing evidence that the foreign judgment should not be given full faith and credit. *Mindis Metals*, 132 S.W.3d at 484. Well-established exceptions to the requirement of full faith and credit include when (1) the judgment sought to be enforced is interlocutory; (2) the judgment is subject to modification; (3) the rendering court lacks personal or subject matter jurisdiction; (4) the judgment was procured by extrinsic fraud; and (5) the period for enforcing the foreign judgment has expired. *Id.* at 485; *see also Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 903 (Tex.App.-Houston [14th Dist.] 2004, no pet.). We look to the laws of the state rendering the judgment to assess the judgment's validity. *Mindis Metals*, 132 S.W.3d at 484.

 Similar to the Texas Long-arm Statute, the Alabama Long-arm Statute extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions. ALA. R. CIV. P. 4.2(a)(2); *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala.2001); *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2006); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). The exercise of personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair

play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795–796. General jurisdiction is present when the defendant's contacts with a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796. Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *Id.* The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the defendant 'purposefully avails' itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 785 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228). There are three important aspects to be considered in evaluating purposeful availment: (1) only the defendant's contacts with the forum count; a defendant cannot be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person; (2) the acts relied upon must be purposeful rather than random, isolated, or fortuitous; and (3) a defendant must have sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). By contrast, a nonresident may purposefully avoid a jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Even a single act can support jurisdiction if it creates a substantial connection with the forum. *Burger King,* 471 U.S. at 476 n. 18, 105 S.Ct. 2174. However, some single or occasional acts related to the forum may be insufficient to establish jurisdiction where their nature and quality create only an attenuated affiliation with the forum. *Id.* Furthermore, jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State ...; [s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 476, 105 S.Ct. 2174.

In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). The following factors are relevant to this determination: (1) the burden on the nonresident defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies.

*World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559.

### Minimum Contacts[1]

■ Here, the appellants' alleged liability arose from activity related to the forum. Accordingly, we examine the record for whether the Alabama court had specific personal jurisdiction over appellants. *See BMC Software,* 83 S.W.3d at 796. We begin by examining the limits of such jurisdiction as established in prior precedent.

In *World–Wide Volkswagen,* the United States Supreme Court considered whether an Oklahoma court could exercise personal jurisdiction over a nonresident automobile retailer and its wholesale distributor when the defendants' only connection with Oklahoma was the fact that they sold an automobile in New York to New York residents that subsequently became involved in an accident in Oklahoma. 444 U.S. at 287, 100 S.Ct. 559. Holding that Oklahoma could not constitutionally assert jurisdiction, the Court explained that the mere fact that it was foreseeable that a automobile sold in New York could cause injury in Oklahoma was an insufficient connection to the forum state for the defendants to reasonably anticipate being haled into an Oklahoma courthouse. *Id.* at 295–97, 100 S.Ct. 559. In *Asahi Metal Industry v. Superior Court,* a plurality of the Court sought to clarify the holding in *World–Wide Volkswagen,* stating that in order for a defendant to have a sufficient connection with a forum to support jurisdiction, the defendant's actions must be more purposefully directed at the forum state than merely having placed a product in the stream of commerce that finds its way to the forum state. *Asahi Metal,* 480 U.S. 102, 110–12, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).[2] Here, the facts and circumstances of appellants' contacts with

1. As mentioned, we look to the laws of the state rendering the judgment to assess the judgment's validity. *Mindis Metals,* 132 S.W.3d at 484. This is certainly true regarding issues of validity based on state substantive and procedural law. *See id.* at 486–90 (addressing issues of finality, modification, and fraud under Georgia law). However, when the issues of validity are based on federal due process considerations, it is unclear whether we should be guided more by forum state precedent or Texas precedent. *See Karstetter v. Voss,* 184 S.W.3d 396, 402–405 (Tex. App.-Dallas 2006, no pet.) (performing minimum contacts analysis and citing both Texas and Kansas precedent); *Wu v. Walnut Equip. Leasing Co.,* 909 S.W.2d 273, 280 n. 2 (Tex. App.-Houston [14th Dist.] 1995), *rev'd on other grounds,* 920 S.W.2d 285 (Tex.1996) (citing both Texas and Pennsylvania precedent and stating that "[t]he initial question of whether the acts of the defendant provide a cognizable basis for personal jurisdiction under the Pennsylvania long-arm statute is one of state law. However, the issue of whether that exercise comports with the constitutional due process is one of federal law."). Accordingly, in our analysis, we consider the facts of this case in light of federal, Texas, and Alabama

precedent. The general principles are the same, and we find that there would be no difference in outcome depending on which state's precedent is controlling.

2. In *World–Wide Volkswagen,* the Supreme Court stated that: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297, 100 S.Ct. 559. As mentioned, in *Asahi,* a plurality of the Court asserted that something more than mere placement in the stream of commerce was required before jurisdiction could attach. 480 U.S. at 110–12, 107 S.Ct. 1026. In *CMMC v. Salinas,* the Texas Supreme Court noted that a majority of the United States Supreme Court has never adopted or rejected the *Asahi* plurality's requirement of additional conduct directed at the forum. 929 S.W.2d 435, 438–39 (Tex.1996). In *Michiana,* the Texas Supreme Court noted that its own holdings have indeed followed the *Asahi* requirement of additional conduct directed toward the forum state. 168 S.W.3d at 786. Inter-

Alabama are distinguishable from those in *World–Wide Volkswagen*, and, indeed, such contacts were more purposefully directed toward the forum state than merely placing them in the stream of commerce. Appellants were contacted by an LP employee stationed in Alabama, negotiated the sale, issued a purchase order requiring shipment to Alabama, selected and paid the rail carrier for shipment to Alabama, and certified that their product met the specifications required by the purchaser in Alabama. Certainly, appellants understood that their product was to be used in Alabama, and appellants purposefully directed conduct toward the forum by negotiating with someone in the forum and sending product to the forum on at least three separate occasions.

In *CMMC v. Salinas*, the Texas Supreme Court considered whether a state court could take jurisdiction over a foreign manufacturer merely because it knew that its allegedly defective product would be shipped into Texas. 929 S.W.2d 435, 436 (Tex.1996). Specifically, the manufacturer in question was based in France and was instructed by an independent New York distributor to arrange with a freight forwarder, selected and paid for by the distributor, to ship the purchased equipment to Texas. *Id.* at 436–37. The court held that mere knowledge that the equipment was to be shipped to and used in Texas was not sufficient to subject the manufacturer to the jurisdiction of Texas courts. *Id.* at 439. Again, the facts of the present case are distinguishable: appellants had direct contact with the customer in Ala-

bama, issued a purchase order requiring shipment to Alabama, selected and paid the rail carrier for shipment to Alabama, and certified that their product met the specifications required by the Alabama purchaser.

In *Michiana*, the Texas Supreme Court considered whether the sale of an RV by an Indiana dealer to a Texas resident subjected the dealer to personal jurisdiction in Texas. 168 S.W.3d at 781, 784. In holding that the dealer did not have the requisite minimum contacts for jurisdiction to apply, the court emphasized that although the dealer knew the vehicle was purchased for use in Texas, it was a single sale, the customer made the initial contact, shipment to Texas was at the customer's sole request and expense, and the parties chose Indiana law to govern any disputes. *Id.* at 787–793. Although in the present case, the LP employee apparently made the initial contact with appellants, there were multiple sales, shipment to Texas was arranged and paid for by appellants, and there apparently is no choice of law provision. Accordingly, the facts of the present case are distinguishable from those in *Michiana*.

In *Wenger Tree Service v. Royal Truck & Equipment, Inc.*, the Alabama Supreme Court considered whether a Pennsylvania refurbisher of specialty trucks was subject to jurisdiction in Alabama in relation to a sale to an Alabama resident. 853 So.2d 888, 889–90 (Ala.2002). In finding that the defendant could not be surprised at being haled into an Alabama courthouse, the court emphasized that the defendant had

---

estingly, the Fifth Circuit has stuck with the broader stream of commerce rule pronounced in *World–Wide Volkswagen*. *See, e.g., Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419–20 (5th Cir.1993) (following *World–Wide Volkswagen* and rejecting *Asahi* ); *see also Luv n' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir.2006) (citing *Ruston* and stating that the Fifth Circuit has consis-

tently followed its adoption of *World–Wide Volkswagen* and rejection of *Asahi* ). Here, as the court did in *Michiana*, we find that the outcome is the same regardless of whether the principles in *World–Wide Volkswagen* or the plurality principles in *Asahi* are applied. *See Michiana*, 168 S.W.3d at 786 ("Whichever of these standards is ultimately correct, Michiana's conduct meets none of them.").

sold trucks directly to the Alabama customer on two separate occasions, negotiated the terms directly with the Alabama purchaser, customized the trucks to meet the Alabama purchaser's specifications, and shipped the trucks to Alabama. *Id.* at 900. The facts in the present case are substantially similar to those in *Wenger:* appellants made multiple sales to LP for use in its Alabama facility, appellants negotiated with an LP employee based in Alabama, appellants certified that their product met LP's specifications, and appellants selected and paid the carrier for shipment to Alabama.

In summary, appellants directed conduct toward the forum that was not merely random, isolated, or fortuitous, and appellants profited by this conduct. *See Michiana*, 168 S.W.3d at 785. Appellants point to the fact that pursuant to the terms of the shipment contract, ownership and risk of loss of the HDPE transferred to LP when the product was loaded on railcars in Texas. However, the fact remains that appellants arranged and paid for shipment to Alabama. That risk of loss switched to LP before the product left Texas does not change this analysis. *See Luv n' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 471 (5th Cir.2006) ("Jurisdiction ... 'does not depend on the technicalities of when title passes ...,'" quoting *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 n. 8 (5th Cir.1980)).[3] Accordingly, we find that appellants' conduct established minimum contacts with Alabama in regards to their sale of HDPE to LP.[4]

### Fair Play and Substantial Justice

"Once it has been decided that a defendant purposefully established mini-

---

3. In *Luv n' care,* a manufacturer of baby bottles attempted to avoid personal jurisdiction by arguing that it purposefully structured its conduct to avoid jurisdiction in Louisiana (and other states). 438 F.3d at 468, 471. Specifically, the manufacturer delivered its product F.O.B. to Wal–Mart in Colorado; Wal–Mart then took title and possession of the products and transported them to its stores nationwide. *Id.* The court found that the F.O.B. term by itself did not prevent the exercise of jurisdiction where other factors suggest that jurisdiction is proper. *Id.* at 471–72. The other factors in *Luv n' care* included the quantity and regularity of shipments. *Id.* The other factors in the present case are well-discussed in the text. The *Luv n' care* court further explained that the primary purpose of a F.O.B. contract is to allocate risk of loss, not to defeat jurisdiction. *Id.* at 472.

4. The dissent asserts that we have not placed sufficient emphasis on the transfer of title in Texas, citing *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801 (Tex. 2002); *Schott Glas v. Adame*, 178 S.W.3d 307 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); and *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132 (Tex.App.-Houston [14th Dist] 2003, pet. denied). However each of these cases is distinguishable from the present case. To begin with, each is a general jurisdiction case and not a specific jurisdiction case. *Am. Type Culture Collection*, 83 S.W.3d at 808; *Schott Glas*, 178 S.W.3d at 317–18; *Zamarron*, 125 S.W.3d at 144. This fact is emphasized not only in each of these cases but also in the Fifth Circuit opinion upon which each of these cases relies: *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375–76 (5th Cir.1987). Additionally, other circumstances in these cases demonstrate that the sales in question were constructed specifically to avoid jurisdiction. For example, in *Schott Glas*, the "vast majority" of sales to the forum state were made through an independent sales representative and an indirect subsidiary. 178 S.W.3d at 314–18. Such is not the case here. Although passage of title (or an F.O.B. term) may be a relevant factor in jurisdictional analysis, it is certainly not a decisive factor. *See supra* note 3. Despite passage of title in Texas, the fact remains that appellants made multiple sales to LP for use at its manufacturing facility in Alabama, conducted negotiations with an LP employee stationed in Alabama, certified that their product met the specifications for use in the Alabama manufacturing process, and arranged and paid for the shipments from Texas to Alabama.

mum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. The other relevant factors are frequently stated as follows: (1) the burden on the nonresident defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559. When a defendant that has purposefully directed activity at the forum state seeks to defeat jurisdiction, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. "[J]urisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478, 105 S.Ct. 2174 (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

■ Having found that appellants established minimum contacts with Alabama, we turn now to the other factors relevant to fair play and substantial justice. Regarding the first additional factor, appellants assert that subjecting them to suit in Alabama would place a substantial burden on them in that they have never conducted business in Alabama and all of their witnesses and documentation would be located in New York or Texas. Although appellants do not cite any evidence in support of this contention, in his

affidavits attached to the plea to the jurisdiction, Lloyd Heller (president of both appellants) averred that neither company conducted "routine or regular sales in Alabama." Based on this and other statements in the affidavits, it is clear that appellants do not have a strong presence in Alabama. However, with offices in at least Texas and New York, it is apparent that appellants do operate on a multi-state basis. Thus, this factor weighs only slightly against finding that jurisdiction in Alabama comports with notions of fair play and substantial justice. Regarding the second factor, Alabama would certainly have an interest in adjudicating a dispute in which it is alleged that an out-of-state manufacturer shipped substandard product to an Alabama facility for manufacturing use in Alabama that caused injury in Alabama. *See Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.,* 163 S.W.3d 120, 132–33 (Tex.App.-San Antonio 2005, no pet.) (holding that Texas had a strong interest in adjudicating a dispute arising from injury sustained in Texas); *Ex Parte Hosp. Espanol de Auxilio Mutuo de Puerto Rico, Inc.,* No. 1050685, —— So.2d ——, ——, 2006 WL 1451494, at *5 (Ala. May 26, 2006) (holding that Alabama has a strong interest in adjudicating lawsuits regarding the safety of organs entering the state for transplantation). Thus, this factor weighs in favor of finding that jurisdiction over appellants is constitutional. Regarding the third factor, LP would presumably have an interest in litigating in Alabama since its facility where the alleged problems occurred is in Alabama; thus, its key witnesses and physical evidence would likely be situated in Alabama. *See Salinas v. CMMC,* 903 S.W.2d 138, 145 (Tex.App.-Austin 1995) (stating that since injury giving rise to cause of action occurred in Texas, it was likely that the great majority of evidence and witnesses could be found in the state), *rev'd*

*on other grounds,* 929 S.W.2d 435 (Tex. 1996); *Ala. Power Co. v. VSL Corp.,* 448 So.2d 327, 329 (Ala.1984) (stating that Alabama would be the more convenient forum because the witnesses were likely to be found there). Consequently, this factor also leans toward finding jurisdiction constitutional. For the same reasons, it would behoove the interstate judicial system for the litigation to occur in Alabama (as that is where the alleged injuries occurred); thus, the fourth factor weighs toward finding jurisdiction to be constitutional. *See E.I. DuPont De Nemours & Co. v. Bailey,* 986 S.W.2d 82, 85 (Tex. App.-Beaumont 1999, pet. dism'd w.o.j.) (discussing premise that controversies are most efficiently resolved where witnesses and evidence are likely to be located); *see also Ala. Power Co.,* 448 So.2d at 329. Regarding the fifth factor, appellants identify no substantive social policies that suggest jurisdiction in Alabama would be improper, and none are evident on the record. Accordingly, this factor does not lean in either direction.

In conclusion, although it might have been inconvenient for appellants to have litigated in Alabama, they have failed to demonstrate that such inconvenience rose to the level of being "so gravely difficult" that they would have been at a "severe disadvantage" in comparison to LP. *See Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. Accordingly, we find that Alabama's exercise of jurisdiction over appellants did not violate traditional notions of fair play and substantial justice. We overrule appellants' sole issue.

We affirm the trial court's order.

YATES, J. dissents.

LESLIE BROCK YATES, Justice, dissenting.

Because I disagree with the majority's conclusion that the facts of this case show appellants purposefully availed themselves of the benefits and protections of Alabama law, I respectfully dissent.

I disagree with the majority's analysis in two respects. First, the quality and quantity of appellants' contacts with Alabama were minimal. They sent only three shipments from Texas to Alabama, and the sales were initiated by the buyer without appellants marketing or soliciting any business in Alabama. The authority the majority distinguishes actually supports the conclusion that jurisdiction is improper in this case. In *CMMC v. Salinas,* the court found no personal jurisdiction based on the shipment of one winepress to Texas because "CMMC's only contacts with Texas are that it made isolated sales of equipment to customers here, and that it knew the machine it sold KLR was being shipped here." 929 S.W.2d 435, 437 (Tex. 1996). The sale was an isolated event without any marketing or advertising in Texas. *Id.* at 439. We followed *CMMC* in *C–Loc Retention Systems, Inc. v. Hendrix,* in which we held that a sales agreement and single or occasional shipments to Texas were insufficient to establish personal jurisdiction, particularly in light of a lack of advertising or other efforts by the seller to direct products to Texas. 993 S.W.2d 473, 479 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Last year, the Texas Supreme Court relied on *CMMC* in holding that the sale of a single RV to Texas was an insufficient basis to support jurisdiction. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784–87 (Tex.2005). The court noted that the sale was initiated at the buyer's request and that the seller did not market to Texas or in any way gear its products toward Texas. *Id.* at 784, 786. Although these three cases differ from this case in some minor factual details, they all clearly indicate that when, as here, the buyer initiates the sale to a

forum that the seller has not targeted and the volume of sales are single or occasional at best, personal jurisdiction is not proper because the seller has not purposefully availed itself of the laws of the forum.

Second, the majority does not place enough significance on the terms of the shipping contract, which stated that goods were shipped F.O.B. Texas, meaning ownership and risk of loss transferred to appellants in Texas rather than Alabama. The majority views this as a mere "technicalit[y]" and gives it little consideration. However, this court and the Texas Supreme Court have held that F.O.B. status is not a mere technicality but an important consideration in jurisdictional analysis because it shows a party's efforts to "purposefully structure[ ] transactions to avoid the benefits and protections of a forum's laws." *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 808 (Tex.2002); *accord Schott Glas v. Adame,* 178 S.W.3d 307, 317–18 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *Zamarron v. Shinko Wire Co.,* 125 S.W.3d 132, 144 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). An F.O.B. term alone "does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper." *Luv n' care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 471–72 (5th Cir.2006). However, as discussed above, those other factors do not suggest jurisdiction is proper here.

Thus, based on appellants' three shipments to Alabama, which were initiated at the buyer's request, the absence of any efforts to direct their products to Alabama, and the F.O.B. term showing a clear intent to avoid the benefits and protections of Alabama's laws, I would hold that the trial court erred in denying appellants' plea to the jurisdiction.