242 P.3d 1060

Barbara Mavis **CRISTALL,**
Petitioner/Appellee,

v.

Robert Ivor Lee **CRISTALL,**
Respondent/Appellant.

No. 1 CA–CV 09–0645.

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 2, 2010.

**592**

McGuire Gardner, P.L.L.C. By Pernell W. McGuire, Flagstaff, Attorneys for Respondent/Appellant.

Law Office of Russell S. Duerksen By Russell S. Duerksen, Chino Valley, and The Counters Firm, P.C. By Lisa Counters, Prescott, Attorneys for Petitioner/Appellee.

THOMPSON, Judge.

¶1 Appellant Robert Cristall (Robert) appeals the trial court's denial of various motions contesting the validity of a foreign judgment entered and domesticated in Arizona by appellee, Barbara Cristall (Barbara). For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 In 1986, Barbara and Robert entered into a property settlement agreement following their divorce, resulting in a consent judgment entered by a California superior court. On December 2, 1996, Barbara filed the California judgment in the Yavapai County Superior Court (trial court), along with an affidavit and a Notice of Filing Foreign Judgment, giving Robert notice "pursuant to A.R.S. § 12–1703(B)" that the California judgment had been filed, and proof that the notice had

been mailed to Robert. In February 1997, Robert filed an objection to domestication of the foreign judgment, arguing the judgment was unenforceable because it was time-barred by Arizona's statute of limitations governing the enforcement of foreign judgments, Arizona Revised Statute (A.R.S.) § 12–544(3) (2010).[1] Barbara filed a response and the court held a hearing on Robert's objection on April 15, 1997. The trial court overruled Robert's objection and ordered that the judgment "shall enter."

¶3 Accordingly, the trial court entered a "judgment domesticating foreign judgment" on May 8, 1997, which ordered the clerk of the court to "treat the Foreign Judgment in the same manner as a Judgment of the Superior Court of the State of Arizona." Pursuant to A.R.S. § 12–1612 (2010), Barbara renewed the judgment every five years thereafter by affidavits filed on May 1, 2002 and April 27, 2007.

¶4 In January 2007, Barbara signed a document stating as follows:

> I am the Petitioner and Judgment Creditor in the matter of *Barbara Mavis Cristall v. Robert Ivor Lee Cristall,* Case No. WED 043657, Superior Court of California/Central Division and Case No. DO 961037, State of Arizona/County of Yavapai.
>
> On January 27, 2007 I assigned all collection rights in the above two judgments to Paragon Financial Fitness Inc., a California Corporation.

¶5 Thereafter, Paragon Financial Fitness, Inc. (Paragon) initiated collection activities by issuing subpoenas to Robert and pursuing a debtor's examination. In April 2008, an attorney representing Paragon sent Robert's attorney a letter, which stated, "[p]lease find enclosed a copy of the assignment signed by Barbara Cristall's [sic] assigning her judgments against your client to Paragon."

¶6 In February 2009, Barbara petitioned the trial court for supplemental proceedings pursuant to A.R.S. § 12–1631, requesting an order which would require Robert to "appear and answer concerning his property" at a

---

1. Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this opinion have since occurred.

debtor's examination. The trial court entered an order scheduling Robert's examination for March 24, 2009, and Robert filed an objection. Robert also filed an objection in April 2009 to Barbara's petition for supplemental proceedings.

¶ 7 In May 2009, Robert filed a motion to set aside judgment, motion to compel, and motion to stay enforcement of the judgment. He argued the judgment was void because Barbara's 2002 and 2007 renewals were untimely. He also alleged that if Paragon was the owner of the judgment, not Barbara, she therefore lacked authority to renew the judgment. Robert's motion to compel argued it was "necessary to establish the true owner of the judgment," and requested the court compel Paragon to respond to a subpoena. The subpoena sought information "related to [Paragon's] acquisition of and/or obtaining an interest in the Judgment," communications between Paragon and Barbara, and "documents evidencing any amounts paid or other consideration transferred by [Paragon] to Barbara [ ] in exchange for any interest in the Judgment."

¶ 8 The trial court held oral argument on June 15, 2009. The trial court denied Robert's motions in August 2009, finding Barbara timely renewed the judgments and that Robert "failed to establish any credible issue with respect to the right of [Barbara] to pursue collection of the judgment." It further found Robert "failed to show that Paragon ... possesses any information material to the issues raised by [Barbara's] collection efforts." The court issued a signed order on September 24, 2009, and denied Robert's motion for reconsideration. Robert filed a timely appeal. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and –2101(B) (2010).

## II. DISCUSSION

### 1. Timeliness of renewal

¶ 9 Robert contends Barbara's affidavits of renewal of the judgment filed in May 2002 and April 2007 were untimely under Arizona law. Because this issue requires statutory interpretation, we apply a de novo standard of review. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, ¶ 5, 181 P.3d 219, 225 (App.2008).

### A. Uniform Enforcement of Foreign Judgments Act

¶ 10 Arizona has adopted the Uniform Enforcement of Foreign Judgments Act (UEFJA), A.R.S. §§ 12–1701 to –1708 (2010), which enables judgment creditors from sister states to "obtain a valid Arizona judgment."[2] *C & J Travel, Inc. v. Shumway*, 161 Ariz. 33, 35, 775 P.2d 1097, 1099 (App.1989). Specifically, § 12–1702 provides as follows:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any superior court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner.

¶ 11 The UEFJA does not create substantive rights, but rather creates "procedures for enforcing rights conferred by the Full Faith and Credit Clause of the United States Constitution." *Citibank (South Dakota), N.A. v. Phifer*, 181 Ariz. 5, 6, 887 P.2d 5, 6 (App.1994). In *Citibank*, we clarified that the filing of the foreign judgment in an Arizona court "does not turn the foreign judgment into a domestic judgment for the purpose of avoiding the statute of limitations [applicable to] foreign judgments." *Id.* at 7, 887 P.2d at 7; *see also* A.R.S. § 12–544(3) (requiring that foreign judgments be commenced and prosecuted within four years after the cause of action accrues). When a foreign judgment is timely filed, the UEFJA "gives the clerk the authority to treat that judgment in the same manner as a domestic

**2.** Foreign judgments entitled to domestication are defined as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." A.R.S. § 12–1701.

judgment." *Citibank,* 181 Ariz. at 7, 887 P.2d at 7.

¶ 12 However, the foreign judgment is not enforceable until twenty days after the judgment creditor mails the notice of filing of the foreign judgment to the judgment debtor and files proof of the same with the court. A.R.S. §§ 12–1703 to –1704(C). Presumably, the purpose of § 12–1704(C) is "to give the judgment debtor an opportunity to stay enforcement of the judgment." *Smith v. Ponderosa Realty & Dev., Inc.,* 125 Ariz. 288, 289, 609 P.2d 103, 104 (App.1980).

### B. Arizona's Renewal Statutes

¶ 13 In Arizona, judgments may be renewed either by action within five years after the date of the judgment under A.R.S. § 12–1611 (2010) or by affidavit pursuant to § 12–1612(B). If the judgment creditor proceeds by filing an affidavit, it must be filed "within ninety days preceding the expiration of five years from the date of entry of such judgment." A.R.S. § 12–1612(B). Section 12–1551(B) similarly provides:

> An execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit ... or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.

¶ 14 The Arizona Supreme Court has observed that "[t]he filing of an affidavit of renewal is simply a ministerial action intended in part to alert interested parties to the existence of the judgment." *In re Smith,* 209 Ariz. 343, 345, ¶ 13, 101 P.3d 637, 639 (2004).

### C. Application of Law to Facts

¶ 15 Robert argues that the period for filing a renewal affidavit in this case commenced on the date Barbara initially filed the California judgment with the trial court, on

December 2, 1996. Barbara's position is that the five-year renewal period began on May 8, 1997, the date the trial court entered the "judgment domesticating foreign judgment." [3]

¶ 16 The burden is upon a party attacking the validity of a foreign judgment. *Leon v. Numkena,* 142 Ariz. 307, 309, 689 P.2d 566, 568 (App.1984). When a judgment creditor files an authenticated copy of a foreign judgment pursuant to the UEFJA, as Barbara did here, the debtor has the burden to prove the foreign judgment should not be given full faith and credit. *See H. Heller & Co., Inc. v. Louisiana–Pacific Corp.,* 209 S.W.3d 844, 849 (Tex.App.2006); *Bartlett v. Unistar Leasing,* 931 So.2d 717, 720 (Ala.Civ. App.2005).

¶ 17 Robert's 1997 objection to domestication of the judgment asserted that the statute of limitations had run. Robert purportedly filed his objection "pursuant to A.R.S. § 12–1704(C)," the provision allowing for a stay of enforcement of the judgment until twenty days after mailing the notice to the debtor and filing a proof of mailing with the court. The trial court considered the parties' written arguments, conducted a hearing and oral argument, and took the matter under advisement. The court then overruled Robert's objection and domesticated and entered the judgment on May 8, 1997.

¶ 18 Robert's reliance on *Eschenhagen v. Zika,* 144 Ariz. 213, 696 P.2d 1362 (App. 1985), in support of his theory that the beginning date for renewal purposes is the date of the initial filing, is misplaced. In *Eschenhagen,* we held that a state applies its own statute of limitations in determining whether a foreign judgment is entitled to enforcement under the UEFJA. 144 Ariz. at 219, 696 P.2d at 1368. In that case, enforcement of the foreign judgment at issue was precluded under either the five-year limitation statute for enforcement of judgments, A.R.S. § 12–

---

**3.** Barbara also asserts the doctrine of laches should bar Robert's claim that the affidavits were untimely filed because he waited until 2009 to attack the validity of the 2002 and 2007 renewal affidavits. This argument has no merit because it "wrongly presupposes that a judgment debtor must act to profit from a judgment creditor's

failure to renew a judgment." *Crye v. Edwards,* 178 Ariz. 327, 328, 873 P.2d 665, 666 (App.1993) (rejecting judgment creditor's laches argument where judgment debtor sought to void judgment on timeliness grounds eight years after creditor purportedly renewed judgment).

1551, or the four-year statute for enforcing foreign judgments, A.R.S. § 12–544(3). *Id.* In the instant case, we are concerned with the timeliness of an affidavit renewing a foreign judgment which, over objection, was successfully domesticated under the UEFJA, an issue *Eschenhagen* does not address. Likewise, we are not persuaded by Robert's interpretation and application of *Citibank (South Dakota), N.A. v. Phifer,* 181 Ariz. 5, 887 P.2d 5, to this case. *Citibank* discusses the statute of limitations governing foreign judgments and involves no issue as to the applicable date for determining compliance with the renewal statutes. *Id.* at 6, 887 P.2d at 6.

¶ 19 Robert also directs our attention to Texas cases involving similar timeliness issues. However, these cases are distinguishable because the Texas version of the UEFJA is substantially different from the version adopted in Arizona. In Texas, "the filing of a foreign judgment in a Texas court partakes simultaneously of the natures of an original petition and a final judgment." *Moncrief v. Harvey,* 805 S.W.2d 20, 24 (Tex.App.1991). In other words, the initial filing of the judgment "instantly creates a Texas judgment that is enforceable." *Ware v. Everest Group, L.L.C.,* 238 S.W.3d 855, 861 (Tex.App.2007) (citing *Moncrief,* 805 S.W.2d at 22); *Walnut Equip. Leasing v. Wu,* 920 S.W.2d 285, 286 (Tex.1996) (filing of foreign judgment under UEFJA comprises both a plaintiff's original petition and a final judgment). Significantly, the Texas version of the UEFJA has no provision comparable to A.R.S. § 12–1704(C) (staying enforcement until twenty days from

the date of filing proof of notice of mailing) or to § 3(c) of the Uniform Act (delaying enforcement from the time of filing).

■ ¶ 20 Under Arizona's UEFJA, a foreign judgment filed under § 12–1702 is not instantly enforceable. The enforceability of the judgment is contingent upon the creditor's compliance with the notice and mailing provisions of § 12–1703 and the passage of twenty days thereafter. *See* A.R.S. § 12–1704(C). Robert's filing of an objection is analogous to filing an answer or response contesting the domestication of the judgment. Filing such an objection put the matter at issue, until the trial court resolved his objection in Barbara's favor and entered a final judgment on May 8, 1997. In other words, domestication was contested until the court determined the contest and directed the clerk to enter judgment. Under these circumstances, where an objection was filed and judgment was subsequently entered, we hold the five-year period in which Barbara was required to renew the judgment under § 12–1612 runs from the date the trial court determined the objection and thereby domesticated and entered the judgment.

¶ 21 We are aware that this holding could be construed to permit the date from which renewal is determined to be significantly later than the date on which the proposed judgment was initially submitted for domestication. Robert asserts prejudice and confusion will result. Those issues are largely resolved if constraints are placed on the period of time in which a judgment debtor may object to the filing.[4]

4. We do not herein address whether such an objection must be filed within the twenty-day window under § 12–1703(C). Although Robert's objection was filed months after Barbara's initial filing of the foreign judgment, Barbara did not argue that Robert's objection was untimely. Accordingly, that issue is not properly before us for consideration on appeal. As a practical matter, however, we observe that one reasonable interpretation of § 12–1703 is that the judgment debtor must take "affirmative action" by filing an answer or response within twenty days in order to not only prevent enforcement of the judgment, but also challenge domestication of the foreign judgment under the UEFJA. *See Davis v. Davis,* 558 So.2d 814, 819 (Miss.1990); *Cf. Smith v. Ponderosa,* 125 Ariz. at 289, 609 P.2d at 104 (speculating, in dicta, that the judgment debtor

can apparently file a response "at any time" under the UEFJA).

In *Davis,* for example, the judgment debtor filed his own suit in tort against the creditor nearly ten months after the creditor's filing of the foreign judgment, claiming the judgment was invalid. 558 So.2d at 819. The Mississippi Supreme Court held the filing of the new lawsuit was not proper or timely under the Mississippi UEFJA, which provides for a twenty-day stay of enforcement, similar to Arizona's UEFJA provisions. *See id.* The court rejected the judgment debtor's attempted "response," explaining that the debtor "should have timely filed an answer or response to [the judgment creditor's] enrollment efforts within 20 days of and from [the date of filing]." *Id.*

**596**

¶ 22 Our conclusion that the renewal statute does not begin to run until an objection to domestication is resolved is consistent with the general principle that "all judgments become effective upon the entry of the one last in time which disposes of the last claim" remaining to be adjudicated. *Hill v. City of Phoenix*, 193 Ariz. 570, 573, ¶ 15, 975 P.2d 700, 703 (1999). Furthermore, we are cognizant of our duty to construe statutory provisions in a manner consistent with related provisions. *Goulder v. Ariz. Dep't of Transp.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993). The language of A.R.S. § 12-1612(B) refers to the "date of entry" of judgment for calendaring renewals. The trial court did not merely overrule Robert's objection in a minute entry; it signed a separate judgment directing the clerk of the court to file and "enter" the judgment on May 8, 1997. *See* Ariz. R. Civ. P. 58(a) ("[t]he filing with the clerk of the judgment constitutes entry of such judgment"). Thus, in this context, the "date of entry" is the date the trial court resolved the objection to domestication under the UEFJA and entered final judgment.

## 2. Assignment to Paragon

¶ 23 Robert argues the trial court erred in denying his motion to stay and motion to set aside judgment because he "submitted unrebutted evidence that [Barbara] has assigned all of her collection rights in the judgment" to Paragon. Robert also contends the trial court abused its discretion when it denied his motion to compel Paragon to appear because he presented "substantial evidence showing that a legitimate question existed as to [Barbara's] rights in the judgment." We will uphold the trial court's factual findings unless they are clearly erroneous. Ariz. R. Civ. P. 52(a).

¶ 24 At the hearing on Robert's objection to supplemental proceedings, Barbara presented evidence to the trial court of the following: 1) both affidavits of renewal filed in 2002 and 2007 were signed by Barbara; 2) there is no record in the court file of the judgment being transferred; 3) all actions in the court file seeking to collect the judgment refer to Barbara as the petitioner; and, 4)

Paragon never appeared in the case, in any capacity. Meanwhile, Robert relies on the letter from Paragon's attorney, in which the attorney mischaracterized the nature of Barbara's transfer of rights to Paragon. Barbara's signed declaration states that she transferred "all collection rights" in the judgment to Paragon, indicating that she had merely authorized Paragon to collect on her behalf.

¶ 25 Furthermore, Barbara asserts that the trial court cannot compel Paragon, a California corporation, to respond to the subpoena unless and until Robert domesticates the Arizona subpoena in California. Robert failed to address this argument in his reply brief, and we are unable to discern from the record whether Robert followed the domestication procedures in § 2029.300 of the California Code of Civil Procedure.

¶ 26 Accordingly, we affirm the trial court's finding that Robert failed to establish any credible issue with respect to Barbara's ownership of the judgment. We conclude the trial court did not abuse its discretion in denying Robert's motion to compel.

### 3. Oral Argument

¶ 27 Finally, Robert argues the trial court erred in denying his three motions without granting his request for oral argument. Without citing legal authority, he asserts the denial of oral argument constitutes a denial of due process. Although he acknowledges the court held argument on June 15, 2009, he complains that this was insufficient because Barbara's responsive pleadings were filed after the oral argument. Robert argues that another hearing was necessary because he added additional arguments and because his original arguments (which the trial court had already heard) were "refined and amplified" in later-filed motions.

¶ 28 Robert relies on Yavapai County Local Rule 2(C), which provides as follows:

**Oral Argument.** All requests for oral argument shall be made in writing by counsel at the time of filing such motion or answering memorandum and opposition memorandum by placing beneath the title of the document the following words: "Oral Argument Requested." When no

request for oral argument is made, argument shall not be allowed and the Court shall decide the motion upon the points and authorities cited. Each side shall be allowed ten minutes for oral argument except when additional time is requested at the time of filing and when additional time is allowed by the Court.

¶ 29 Local Rule 2(C), however, does not require the trial court to hold oral argument upon request. Courts may rule "without oral hearing." Ariz. R. Civ. P. 7.1(c). Thus, the trial court has discretion to grant or deny a request for oral argument. The trial court's decision not to grant Robert additional oral argument was well within the court's discretion.

### III. CONCLUSION

¶ 30 For the foregoing reasons, we affirm.

CONCURRING: DONN KESSLER, Presiding Judge, and DANIEL A. BARKER, Judge.