**THUNDERBIRD SUPPLY CO., INC., Appellant,**

v.

**Leslie B. WILLIAMS, Appellee.**

**No. 09–04–279 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Feb. 10, 2005.

Decided March 24, 2005.

---

Gary L. Ingram, Daniel R. McCabe, Jackson Walker LLP, Fort Worth, for appellant.

Tom N. Kiehnhoff, Reaud, Morgan & Quinn, LLP, Beaumont, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an interlocutory appeal from the denial of a special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2005); TEX.R. CIV. P. 120a. Alleging thirteen corporations "designed, manufactured and marketed" toxic products placed into the stream of commerce, Leslie B. Williams, a jeweler suffering from scleroderma, sued Thunderbird Supply Co., Inc. ("Thunderbird"), among others, on theories of strict product liability, defective marketing, negligence, and breach of warranty. In its order denying the special appearance, the trial court found that Thunderbird placed a silica-containing product into the stream of commerce with the reasonable expectation it would enter Texas. The seven issues raised in this appeal challenge the trial court's exercise of personal jurisdiction over the appellant, a New Mexico corporation.[1] For the following reasons, we reverse the trial court's order and render judgment dismissing Williams's claims against Thunderbird for lack of jurisdiction.

■■■ A Texas court may exercise personal jurisdiction over a nonresident defendant to the extent authorized by due process standards and the long-arm statute. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). As the plaintiff, Williams bears the initial burden of pleading allegations sufficient to bring the non-resident defendant within the provisions of the long-arm statute. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). In its first issue, Thunderbird argues that Williams's allegations do not satisfy this initial burden.

■■■ Our long-arm statute allows Texas courts to exercise jurisdiction over foreign defendants who are "doing business" within the state. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Williams alleges that he is "a resident-citizen of Jefferson County, Texas" and Thunderbird "is a foreign corporation doing business in Texas" that "does not maintain a regular place of business in Texas and has not designated or maintained an agent for service of process in this State." Williams also alleges that he was exposed to "various toxic products designed, manufactured and marketed" by the thirteen so-called "Jewelry Defendants," but he does not allege that exposure occurred in Texas. Nonetheless, Williams's venue allegation states, "Venue in Jefferson County is proper in that all or a substantial part of the events or omissions giving rise to the claims occurred in this county." Commission of a tort within

---

1. The appellant's brief combines its issues in a single argument. The issues are: (1) the absence of specific jurisdictional allegations required the Special Appearance to be granted upon Thunderbird Supply Co. Inc.'s proof of non-residency; (2) Thunderbird Supply Co. Inc.'s independent contacts with Texas do not support the exercise of jurisdiction; (3) Leslie B. Williams produced no evidence that would support personal jurisdiction in Texas over Thunderbird Supply Co. Inc.; (4) the exercise of personal jurisdiction over Thunderbird Supply Co. Inc. is not consistent with traditional notions of fair play and substantial justice; (5) the trial court should have excluded from evidence certain discovery responses of a defendant not a party to the Special Appearance; (6) the trial court's findings of fact are not supported by the evidence; and (7) the trial court's conclusions of law are incorrect and should be reversed.

the state is one means by which a nonresident may be deemed to be doing business in the state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1997). Upon filing its special appearance, Thunderbird assumed the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex. 2002); *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). Thus, Williams met his initial burden of pleading allegations sufficient to bring Thunderbird within the long-arm statute, and Thunderbird assumed the burden to negate the basis of personal jurisdiction alleged by Williams. Issue one is overruled.

■■■ Next, Thunderbird contends its independent contacts with Texas do not support the exercise of jurisdiction. Due process requires that the nonresident defendant must have purposefully established minimum contacts with Texas and that the exercise of personal jurisdiction over the nonresident defendant must not violate traditional notions of fair play and substantial justice. *Guardian Royal,* 815 S.W.2d at 230–31. Purposely established minimum contacts may support the exercise of specific jurisdiction, where the defendant's liability arises from an activity conducted in the forum state, or general jurisdiction, where the nonresident maintains continuous and systematic contacts with the forum state. *BMC Software,* 83 S.W.3d at 795–97. An analysis of specific jurisdiction focuses on the relationship between the defendant, the forum, and the litigation, and requires a substantial connection between the plaintiff's cause of action and the activities the defendant purposefully directed to the forum. *Guardian Royal,* 815 S.W.2d at 228, 230. An analysis of general jurisdiction is more demanding, and "requires a showing of substantial activities in the forum state." *Id.* at 228.

In *American Type Culture Collection,* 83 S.W.3d at 806, the Supreme Court explained that our review must focus upon the defendant's actions and expectations, as follows:

The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant is not subject to jurisdiction here if its Texas contacts are random, fortuitous, or attenuated. *See Guardian,* 815 S.W.2d at 226. Nor can a defendant be haled into a Texas court for the unilateral acts of a third party. *Id.* It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Id.* at 230 n. 11.

Thunderbird contends the evidence does not support the exercise of specific jurisdiction. An affidavit from Thunderbird officer Claudia Klesert describes Thunderbird's contacts with Texas, as follows: (1) half of Thunderbird's sales consist of "supplies, tools, findings, and stones"; (2) although most of its over-the-counter sales are to craftsmen from New Mexico and Arizona, Thunderbird operates two mail order sales units; (3) one mail order sales unit services small volume retail sales to small volume customers such as hobbyists, while the other supplies larger volume sales to wholesale accounts such as bead shops; (4) in the previous five years, Thunderbird had not sold any products to

Williams or to his employers; Thunderbird did not begin selling any metal polishing compounds formerly manufactured or sold by Maspeth Polishing Material Co., Inc. until February 2002; (5) based on Klesert's knowledge, the only sales by Thunderbird of polishing compounds to Texas residents prior to February 2002 were through mail order sales; (6) less than 2% of Thunderbird's sales were in Texas.

Williams contends he traced a silica-containing polishing compound of the brand name Tripoli from Williams to his 1977–78 employer Ardans, to New York retailer, Paul H. Gesswein & Co., Inc., to Thunderbird. To prove he was injured in the forum state by the appellant's silica-containing product, Williams relies upon discovery produced by co-defendant Paul H. Gesswein & Co., Inc. ("Gesswein"), and excerpts from Williams's deposition. Williams's evidence consists of the following: (1) Gesswein's production of a Material Safety Data Sheet dated May 28, 2002, that identifies "A–Tripoli" as a Thunderbird product containing 70–80% silica; (2) Williams's deposition testimony that he "used rouge or Tripoli that was purchased from Gesswein" when he worked at "a place called Ardan's" in 1977 and 1978. Thus, Williams argues, he satisfies the "stream of commerce" test in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

 Both at trial and on appeal, Thunderbird raises authentication and hearsay objections to Gesswein's responses to discovery conducted before Williams added Thunderbird to his suit. We need not decide whether the trial court erred in considering this evidence because the evidence in the appellate record does not establish purposeful acts directed toward the forum state. At most, the evidence establishes that a silica-containing product introduced into the stream of commerce by Thunderbird eventually found its way to a Texas resident allegedly injured by silica exposure. There is no evidence to support the trial court's finding that Thunderbird had a reasonable expectation that the product would enter Texas. In *World–Wide Volkswagen,* the United States Supreme Court noted it was foreseeable that automobiles sold by the foreign corporation might travel to the forum state, but that the "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *Id.* at 299, 100 S.Ct. 559. Likewise, in *CMMC v. Salinas,* 929 S.W.2d 435, 436–40 (Tex. 1996), the Texas Supreme Court held the absence of evidence that the foreign corporation purposefully availed itself of the Texas market precluded the exercise of personal jurisdiction over the maker of a winepress manufactured in Europe, sold to a New York distributor who advertised in national publications, and shipped from the manufacturer to the consumer FOB Houston. There is no evidence of Thunderbird's efforts to market its product in Texas, or that it made any effort to serve a market for its product in the forum state, or was even aware that a third party marketed Thunderbird's products in Texas. We hold that the evidence does not support the exercise of specific jurisdiction.

On appeal, Williams argues the evidence of Thunderbird's mail order sales in Texas satisfies the "continuous and systematic" prong of the test for general jurisdiction, and that the trial court's order is sustainable on that basis. Thunderbird contends Williams failed to allege a basis for general jurisdiction. Although Williams alleges Thunderbird is "doing business" in Texas, his petition does not allege that Thunderbird maintains continuous and systematic

contacts with the forum state. Williams's response to the special appearance argues there is sufficient evidence "Thunderbird placed the products at issue in this case into the stream of commerce with the reasonable expectation that they would enter Texas," but, as in his petition, Williams does not contend that Thunderbird maintains continuous and systematic contacts with this state and does not directly address the issue of general jurisdiction.

The trial court incorporated its factual findings into its order, and its expressly stated basis for exercising jurisdiction was that "Thunderbird *placed the products at issue in this case* into the stream of commerce with the reasonable expectation that they would enter Texas." (emphasis added) The trial court did not find that Thunderbird conducts substantial activities in Texas, limited its findings to Thunderbird's activities in this case, and made no factual findings relating to Thunderbird's activities unrelated to this case. There are no factual findings germane to general jurisdiction as opposed to specific jurisdiction. Assuming the issue of general jurisdiction was before the trial court for its consideration, the grounds expressly stated in the order denying the special appearance relate to specific jurisdiction. Therefore, only specific jurisdiction is at issue in this appeal.

Williams also suggests he "should have an opportunity to conduct discovery into the supply houses that purchased polishing compounds from Thunderbird." Unlike the plaintiff in *BMC Software*, 83 S.W.3d at 800, Williams did not request a continuance of the special appearance hearing so he could conduct further discovery. Therefore, we decline to remand the case to the trial court for further discovery.

2. Because we reverse the trial court's order denying the special appearance, we do not

We conclude that Thunderbird did not purposefully establish sufficient minimum contacts with Texas to support exercising jurisdiction over it. Therefore, the trial court erred in denying the special appearance. Issue two is sustained.[2] (2) We reverse the trial court's order and render judgment dismissing the claims of Leslie B. Williams against Thunderbird Supply Co., Inc.

REVERSED AND RENDERED.

reach the appellant's remaining issues.