Opinion issued June 24, 2010















     

In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00809-CV




ANNA I. MASON, Appellant

v.

ANTHONY J. MASON, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2004–61300




O P I N I O N

          In the trial court, appellee, Anthony J. Mason (“Tony”), obtained a “Final
Divorce Decree,” which granted a divorce between him and appellant, Anna I. Mason
(“Anna”), and divided their marital estate. Anna, a resident of California, who was
served by publication, filed a post-decree special appearance only with respect to
Tony’s claim for division of the marital estate; she did not specially appear with
respect to Tony’s claim for divorce.


 
          Subject to her special appearance, Anna also filed a motion for new trial. The
trial court denied Anna’s special appearance and her motion for new trial. In two
issues, Anna appeals these rulings.
          Because we hold that the trial court lacked the required jurisdiction to make the
property division, as asserted in Anna’s special appearance, we reverse the decree
insofar as it divides the property of the marital estate, and we render the judgment that
the trial court should have rendered.
Factual & Procedural Background
          Tony and Anna were married in Virginia on November 27, 1992. The couple
lived together in Virginia until 1994. For the next two to three years, the couple did
not regularly reside together, with Tony living and working outside of Virginia for
at least a part of this time. In 1996 or 1997, Anna filed for divorce in Virginia. The
divorce, however, never became final. The couple remained married, but no longer
had contact with one another. The couple had no children together.
          In January 2004, Tony moved to Texas. Around this time, he requested a copy
of the divorce decree from the Commonwealth of Virginia. The commonwealth
notified Tony that it had no record of a divorce between him and Anna. 
          On November 2, 2004, Tony filed for divorce in Harris County district court. 
In his petition, Tony pled no jurisdictional facts indicating that the trial court had
personal jurisdiction over Anna. Tony stated that Anna could be served at an address
in Kings Beach, California. Anthony requested the trial court to grant him a divorce
from Anna and to divide the community estate “in a manner that the Court deems just
and right, as provided by law.” 
          After attempting unsuccessfully to serve Anna in California, Anthony obtained
the court’s permission to serve her by publication. The citation was published in the
Harris County Daily Court Review on February 3, 2005. To represent Anna, the trial
court appointed an attorney ad litem, who answered the suit by general denial. 
          On June 15, 2005, the trial court conducted a hearing on Tony’s divorce
petition. Tony and his attorney appeared, and the attorney ad litem appeared for
Anna, who did not appear. Tony confirmed that he was unable to locate Anna for
service of citation. The attorney ad litem also informed the court that she was unable
to locate Anna. 
          At the conclusion of the hearing, the trial court rendered judgment granting
Tony a divorce from Anna and dividing the marital estate. With regard to the
property division, the trial court’s decree provides that each party receive the personal
property in that party’s possession or titled in that party’s name as his or her “sole and
separate property.” The court ordered that each party be responsible for debts,
liabilities, and taxes incurred by that party. 
          Anna became aware of the divorce and property division in early 2007. On
June 14, 2007, Anna filed a special appearance in which she alleged that, because it
lacked personal jurisdiction over her, the trial court erred by dividing the marital
estate. Subject to her special appearance, Anna also filed a motion for new trial in
which she alleged, inter alia, that she had no knowledge of the divorce proceeding
prior to rendition of the decree and that she had a meritorious defense to the suit. 
          After conducting a hearing, the trial court denied Anna’s special appearance.
Anna filed a formal bill of exception complaining that the trial court had not allowed
her to provide jurisdictional evidence, specifically her own testimony, at the special
appearance hearing. 
          Following an evidentiary hearing, the trial court also denied Anna’s motion for
new trial. This appeal followed. In two issues, Anna challenges the trial court’s
denial of her special appearance and its denial of her motion for new trial.
 
Special Appearance
          In her first issue, Anna contends that the trial court erred by denying her special
appearance. 
A.      Standard of Review
          Because it involves a question of law, we review de novo a trial court’s
determination of a special appearance. See Kelly v. Gen. Interior Consrt., Inc., 301
S.W.3d 653, 657 (Tex. 2010); Moki Mac River Expeditions v. Drugg, 221 S.W.3d
569, 574 (Tex. 2007). 
B.      The Parties Agree on Certain Points
          To assist in framing the special-appearance issue for discussion, we note that
the parties agree on three significant points. First, the parties do not dispute that the
trial court had jurisdiction to grant a divorce between Tony and Anna. 
          It is well-established that a court may grant a divorce to a Texas resident, even
though it lacks personal jurisdiction over the non-resident spouse. See 
Dawson-Austin v. Austin, 968 S.W.2d 319, 324–25 (Tex. 1998). Stated differently,
a court may have jurisdiction to grant a divorce, which is an adjudication of the
parties’ status, but not have jurisdiction to divide their property, which is an
adjudication of parties’ rights. Id. at 324 (citing Estin v. Estin, 334 U.S. 541, 549, 68
S. Ct. 1213, 1218 (1948)). As one court explained, “Where the trial court in a divorce
proceeding has no personal jurisdiction over the respondent, the trial court has the
jurisdiction to grant the divorce, but not to . . . divide property outside the State of
Texas. It may also lack jurisdiction to divide property within the state.” Hoffman v.
Hoffman, 821 S.W.2d 3, 5 (Tex. App.—Fort Worth 1992, no writ) (internal citations
omitted). 
          In short, a claim for divorce and a claim for division of marital property are
separate jurisdictional issues. See id.; see also Tex. Fam. Code Ann. § 6.308(a)
(Vernon Supp. 2009) (“A court in which a suit for dissolution of a marriage is filed
may exercise its jurisdiction over those portions of the suit for which it has
authority.”). Here, Anna does not challenge the portion of the trial court’s decree
granting a divorce between her and Tony. Rather, she challenges only that portion
of the decree relating to property division. 
          Second, the parties agree that the trial court lacked personal jurisdiction over
Anna. Indeed, it is neither alleged nor shown that Anna ever lived in Texas,
transacted any business in Texas, or participated in obtaining any property or assets
in Texas. Nor is it alleged nor shown that Anna consented to or participated in
Tony’s transference of marital assets to Texas or in his acquisition of assets in Texas. 
          In his brief, Tony concedes the lack of in personam jurisdiction, but asserts that
“personal jurisdiction over Anna was not necessary to obtain the relief ultimately
granted in the [trial court’s judgment].” He contends that the trial court was permitted
to divide the marital estate “in absence of personal jurisdiction over Anna.” 
          Third, the parties correctly agree that the Texas supreme court’s opinion,
Dawson-Austin v. Austin, 968 S.W.2d 319 (Tex. 1998), guides the resolution of this
issue. Thus, we turn to that case, and its underlying principles, to determine whether
the trial court had jurisdiction to divide the marital estate in this case.
C.      Analysis
          To understand its holding, it is helpful to lay out the background of Dawson-Austin. There, Austin (“Husband”) started a business in Minnesota before his
marriage to Dawson-Austin (“Wife”). Id. at 320. During the marriage, Husband’s
business substantially increased in value. Id. Husband and Wife lived in Minnesota
for most of their marriage. Id. They also acquired property in other locations,
including a home in California. Id. at 320–21.
          After they separated, Husband moved to Texas, and Wife moved to California.
Id. at 321. Six months after moving to Texas, Husband filed for divorce in Texas. 
Id. Wife filed a special appearance objecting to the Texas court’s jurisdiction to
divide the marital estate. See id. The record showed that Wife had never lived in
Texas and had traveled to Texas only a few times on business. Id. The trial court
overruled her special appearance, and the court of appeals affirmed. Id. Wife
petitioned the Texas supreme court, which granted review.
          Beginning its jurisdictional discussion, the Texas supreme court explained in
Dawson-Austin, “The United States Constitution permits a state court to take personal
jurisdiction over a defendant only if it has some minimum, purposeful contacts with
the state, and the exercise of jurisdiction will not offend traditional notions of fair
play and substantial justice.” Id. at 326 (citing Int’l Shoe Co. v. Washington, 326 U.S.
310, 316, 66 S. Ct. 154, 158 (1945); CMMC v. Salinas, 929 S.W.2d 435, 437 (Tex.
1996)). 
          The Dawson-Austin court made clear, however, that the lack of personal
jurisdiction over Wife did not end the inquiry with regard to whether the trial court
could divide marital property located in Texas. See id. at 327. “Even though the
district court did not have in personam jurisdiction over [Wife], it is possible under
the United States Constitution, and thus under Texas law, for the court to have had
jurisdiction to divide the marital estate located in Texas.” Id. 
          In Dawson-Austin, “[t]he property in Texas in which the parties claimed an
interest was [Husband’s] Dallas home and Texas bank accounts, which the parties
agreed was community property, and the stock certificate evidencing [Husband’s]
shares in [his business].” Id. To determine whether the trial court had jurisdiction
to divide this property, the Dawson-Austin court began by recognizing that,
historically, “a state court could exercise jurisdiction over property within the state’s
borders and determine the rights and interests of non-residents.” Id. (citing Pennoyer
v. Neff, 95 U.S. 714 (1877)). The court then explained that the United States Supreme
Court abandoned this position in Shaffer v. Heitner, 433 U.S. 186, 97 S. Ct. 2569
(1977). Id. The Shaffer court held that jurisdiction over property “must be based on
minimum, purposeful contacts and must not offend traditional notions of fair play and
substantial justice.”


 Id. (citing Shaffer, 433 U.S. at 212, 97 S. Ct. at 2584). 
          In reaching this conclusion, the Shaffer court reasoned as follows:
 
The fiction that an assertion of jurisdiction over property is anything but
an assertion of jurisdiction over the owner of the property supports an
ancient form without substantial modern justification. Its continued
acceptance would serve only to allow state-court jurisdiction that is
fundamentally unfair to the defendant.
 
We therefore conclude that all assertions of state-court jurisdiction must
be evaluated according to the standards set forth in International Shoe
and its progeny.




Shaffer, 433 U.S. at 212, 97 S. Ct. at 2584. 

          After its discussion of Shaffer, the Dawson-Austin court offered the following
analysis of the facts before it:
[T]he location in Texas of property that either is or is claimed to be part
of the marital estate does not supply the minimum contacts required for
the court to exercise jurisdiction over [Wife]. [Husband] bought his
Dallas home, opened his Texas bank accounts, and brought his
[business’s] stock certificate to Texas after he separated from [Wife]. 
We do not believe that one spouse may leave the other, move to another
state in which neither has ever lived, buy a home or open a bank account
or store a stock certificate there, and by those unilateral actions, and
nothing more, compel the other spouse to litigate their divorce in the
new domicile consistent with due process. One spouse cannot, solely by
actions in which the other spouse is not involved, create the contacts
between a state and the other spouse necessary for jurisdiction over a
divorce action. 

Dawson-Austin, 968 S.W.2d at 327 (citing In the Interest of S.A.V., 837 S.W.2d 80,
83–84 (Tex. 1992) (holding that without personal jurisdiction over one parent, a court
could still decide custody of a child living in the State, but could not determine
support and visitation)). The Dawson-Austin court continued, “Moreover, [Wife’s]
claim to a part of the value of the [] stock is completely unrelated to the situs of the
certificate; rather, it is based on the parties’ efforts to increase the value of
[Husband’s business], most of which occurred in Minnesota.” Id. 
          The court concluded, “In no sense can it be said that [Wife] ever ‘purposefully
availed’ herself of the privilege of owning property in this State.” Id. (citing Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183–2184 (1985)). 
Hence, “the district court lacked jurisdiction to adjudicate [Wife’s] claim to part of
the value of the [business’s] stock or to divide the marital estate.” Id. at 328. The
Dawson-Austin court ultimately held, “The district court had jurisdiction only to grant
a divorce and not to determine the parties’ property claims.” Id.
          Here, we begin by noting that Tony did not plead any jurisdictional facts with
respect to Anna. Any property in Texas that is part of the marital estate in this case
cannot, by itself, supply the requisite minimum contacts for the trial court to exercise
personal jurisdiction over Anna or quasi in rem jurisdiction to adjudicate the parties’
property interests. See id. at 327; see also Shaffer, 433 U.S. at 212–13, 97 S. Ct. at
2584. 
          There is no indication in the record that Anna consented to Tony’s transference
of property to Texas or participated in the acquisition of property in Texas. And, it
appears undisputed that Anna has never resided in Texas, transacted any business in
Texas, or had any meaningful contacts with Texas. As in Dawson-Austin, it is not
consistent with the principles of due process in this case to permit Tony to force Anna
to litigate their divorce in Texas solely by his unilateral actions of moving to Texas
and acquiring property here.


 See Dawson-Austin, 968 S.W.2d at 327. Tony’s
conduct cannot create the requisite minimum contacts between Anna, Texas, the
property, and the litigation necessary for the trial court to divide the marital estate. 
See id.; see also Hanson v. Denckla, 357 U.S. 235, 253 78 S. Ct. 1228, 1239–1240
(1958) (“The unilateral activity of those who claim some relationship with a
nonresident defendant cannot satisfy the requirement of contact with the forum State. 
The application of that rule will vary with the quality and nature of the defendant’s
activity, but it is essential in each case that there be some act by which the defendant
purposefully avails itself of the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its laws.”). 
          We recognize that, in his responsive brief, Tony presents argument to support
the trial court’s denial of Anna’s special appearance. Tony points to language in
Shaffer, the United States Supreme Court opinion on which the Dawson-Austin court
relied. He contends that the following language in Shaffer indicates that a state court
may divide the property of a person over whom the court lacks personal jurisdiction
when that property is the subject matter of the underlying dispute:
The case for applying to jurisdiction in rem the same test of “fair play
and substantial justice” as governs assertions of jurisdiction in personam
is simple and straightforward. It is premised on recognition that “(t)he
phrase, ‘judicial jurisdiction over a thing,’ is a customary elliptical way
of referring to jurisdiction over the interests of persons in a thing.”
Restatement (Second) of Conflict of Laws § 56, Introductory Note
(1971) (hereafter Restatement). This recognition leads to the conclusion
that in order to justify an exercise of jurisdiction in rem, the basis for
jurisdiction must be sufficient to justify exercising “jurisdiction over the
interests of persons in a thing.” The standard for determining whether
an exercise of jurisdiction over the interests of persons is consistent with
the Due Process Clause is the minimum-contacts standard elucidated in
International Shoe.
 
This argument, of course, does not ignore the fact that the
presence of property in a State may bear on the existence of jurisdiction
by providing contacts among the forum State, the defendant, and the
litigation. For example, when claims to the property itself are the source
of the underlying controversy between the plaintiff and the defendant,
it would be unusual for the State where the property is located not to
have jurisdiction. In such cases, the defendant’s claim to property
located in the State would normally indicate that he expected to benefit
from the State’s protection of his interest. The State’s strong interests
in assuring the marketability of property within its borders and in
providing a procedure for peaceful resolution of disputes about the
possession of that property would also support jurisdiction, as would the
likelihood that important records and witnesses will be found in the
State. . . .




Shaffer, 433 U.S. at 207–08, 97 S. Ct. at 2581 (footnotes omitted). Relying on the
Shaffer court’s illustration, Tony asserts that, because the property of the marital
estate is the “subject matter” of the dispute here, the trial court had the requisite in
rem jurisdiction to make the property division. 
          We disagree with Tony’s reading of Shaffer. Whether the litigation is a dispute
over property located in the forum state is but one factor in the analysis. In a footnote
to the above-quoted text, the Supreme Court made clear: “We do not suggest that
these illustrations include all the factors that may affect the decision, nor that the
factors we have mentioned are necessarily decisive.” Id. at 208 n.28, 97 S. Ct. at
2581–82 n.28. 
          In addition, the Supreme Court was careful to state that “the defendant’s claim
to property located in the State would normally indicate that he expected to benefit
from the State’s protection of his interest.” Id. at 207–08, 97 S. Ct. at 2581 (emphasis
added). In a footnote to this statement, the Supreme Court clarified, “In some
circumstances the presence of property in the forum State will not support the
inference suggested in the text.” Id. at 207–08 n.25, 97 S. Ct. at 2581 n.25. Such
circumstances were present in Dawson-Austin and are present here. Dawson-Austin
and this case both involve a non-resident spouse with no past significant connections
with Texas, who neither consented to, nor participated in, the transference or
acquisition of the “subject” marital property in Texas.


 This was the focus of the
Dawson-Austin court’s analysis when it determined that the trial court in that case
lacked jurisdiction to divide the marital estate.


 See Dawson-Austin, 968 S.W.2d at
327. And it is our focus here.
          We, like the Dawson-Austin court, are also mindful that the Shaffer court
instructed that “[t]he standard for determining whether an exercise of jurisdiction
over the interests of persons is consistent with the Due Process Clause is the
minimum-contacts standard elucidated in International Shoe.” See Shaffer, 433 U.S.
at 207, 97 S. Ct. at 2581; see also Dawson-Austin, 968 S.W.2d at 327. The Supreme
Court in International Shoe made clear that the constitutional touchstone of a due
process inquiry is determining whether the defendant purposefully established
minimum contacts in the forum state. See Int’l Shoe, 326 U.S. at 316, 66 S. Ct. at
158; see also Burger King Corp, 471 U.S. at 474, 105 S. Ct. at 2183. As discussed
supra, such minimum contacts are lacking in this case. The record before us does not
demonstrate that Anna purposefully availed herself of the privilege of owning
property in Texas. See Dawson-Austin, 968 S.W.2d at 327. There is no indication
that Anna has purposefully availed herself of the benefits and protections of the laws
of this state in order to protect her interest in the marital estate.


 Accordingly, the
trial court lacked the requisite jurisdiction to divide the marital property. See id. at
327–28. 
          We hold that the trial court erred when it denied Anna’s special appearance
challenging the trial court’s jurisdiction to divide the marital estate. 
          We sustain Anna’s first issue.



Conclusion
          We reverse the portion of the trial court’s Final Divorce Decree insofar as it
divides the property of the marital estate, and we render the decree that the trial court
should have rendered.


 See Tex. R. App. P. 43.3. 




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.