**Opinion issued August 29, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00894-CV**

———————————

**JIANGSU GENERAL SCIENCE TECHNOLOGY CO., LTD., Appellant**

**V.**

**DIANA SANCHEZ AND STEPHANIE SANCHEZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JUAN SANCHEZ, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-81655**

---

**MEMORANDUM OPINION**

Jiangsu General Science Technology Co., Ltd. (Jiangsu) appeals the denial of its special appearance in a wrongful death and survival action brought against it by Diana Sanchez and Stephanie Sanchez, individually and on behalf of the Estate of Juan Sanchez (the Sanchezes).

In four issues, Jiangsu contends that the trial court erred in denying its special appearance. We reverse the trial court's order denying Jiangsu's special appearance and render judgment dismissing the Sanchezes' claims against Jiangsu for lack of jurisdiction.

**Background**

In their live pleadings, the Sanchezes alleged that "Juan Sanchez was driving a truck/trailer from Birmingham, Alabama to Houston, Texas when he was involved in a fatal accident in Meridian[,] Mississippi." A defective tire failed, causing a blowout. Juan lost control of the truck/trailer, which overturned and hit a tree. Juan suffered fatal injuries from the collision.

The Sanchezes asserted claims for negligence and strict product liability initially against other defendants, including Statewide Tires, Inc. (Statewide). After Statewide identified Jiangsu as its tire supplier, the Sanchezes added Jiangsu to the lawsuit alleging that "on information and belief," Jiangsu manufactured the defective tire that caused the collision. They brought products liability claims under the wrongful death and survival statutes, asserting that Jiangsu was liable for the negligent design and negligent manufacture of the defective tire.

To support personal jurisdiction over Jiangsu, the Sanchezes alleged that Jiangsu intentionally put its products in the stream of commerce and directed business activities throughout the United States, "including having its products sold

2

and used in Texas." Jiangsu had a sales and marketing department in charge of selling its tires in the United States, "market[ed] its tires at various tire exhibitions in the United States," and was "aware that its tires were being sold in Texas." The Sanchezes also alleged that Statewide was Jiangsu's exclusive "sales agent" and a part of Jiangsu's sales network in the United States, and that in 2018, Jiangsu "knowingly shipped" hundreds of its tires from China directly to Houston, Texas.

Jiangsu responded by filing a special appearance. The parties participated in jurisdictional discovery, which included taking the deposition of Jiangsu's designated corporate representative, Ding Zhenhong. Jiangsu amended its special appearance to include excerpts from Zhenhong's deposition. It argued that the Sanchezes failed to establish personal jurisdiction over Jiangsu because it was not a Texas resident and did not have minimum contacts with Texas.

Jiangsu explained that it was "a corporation incorporated under the laws of China" with its principal office in Wuxi, Jiangsu province. In an affidavit accompanying the special appearance, Zhenhong attested that during the relevant time period,

- Statewide was the sole distributor of Jiangsu's tires in the United States;
- Jiangsu relied exclusively on Statewide as its sole exclusive United States distributor;
- Jiangsu has never distributed its tires in the United States;

3

- Jiangsu did not have any factories in Texas and did not manufacture tires or sell tires in the State of Texas;

- Jiangsu did not have any corporate headquarters, offices, or officers, and did not maintain any corporate records in Texas;

- Jiangsu did not own property in Texas;

- Jiangsu did not design tires in Texas;

- Jiangsu did not have any dealerships in Texas;

- Jiangsu never maintained a bank account in Texas;

- Jiangsu did not advertise to the Texas market or participate in promotional events directed to the Texas market;

- Jiangsu did not have any sales representatives in the United States; and

- Jiangsu did not have a marketing department in the United States.

According to Jiangsu, it relied on Statewide as its "exclusive distributor" within the United States and "was not aware that Statewide was selling Jiangsu's products" in Texas. Jiangsu denied that Statewide was its "sales agent," or that Statewide was a part of Jiangsu's sales network in the United States. Jiangsu noted that it had a sales manager in China to manage its sales to Statewide. But Statewide conducted its own marketing activities, and Jiangsu "did not know where, and had no right to influence where" Statewide sold Jiangsu's products.

Jiangsu acknowledged that it "shipped goods to various ports, including the Port of Houston, as directed by Statewide." But Jiangsu did not know where its tires were sold after Statewide received the shipments. Statewide stopped distributing Jiangsu tires in the United States in 2019.

4

The trial court denied Jiangsu's special appearance and this appeal followed.

## Special Appearance

A defendant may challenge a plaintiff's allegations supporting personal jurisdiction by filing a special appearance. *See* TEX. R. CIV. P. 120a. We review a trial court's ruling on a special appearance de novo. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). A trial court must often resolve fact questions before deciding whether it has personal jurisdiction over a defendant. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When faced with that task, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we defer to its resolution of any such questions. *Douglas Elliman Realty, LLC v. Griffin Partners III-520/2017 L.P.*, No. 01-21-00083-CV, 2023 WL 2247765, at *10 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet.) (mem. op.) (citing *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). When, as here, the trial court has not issued findings of fact and conclusions of law, we imply all fact findings necessary to support the judgment which are supported by evidence. *Old Republic Nat'l Tire Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *BMC Software*, 83 S.W.3d at 795).

## Personal Jurisdiction

A court may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute and due process requirements of the Fourteenth Amendment to the United States Constitution are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *LG Chem. Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction over a nonresident defendant who is doing "business in this state," which the Legislature has defined to include "commit[ing] a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2); *LG Chem. Am.*, 670 S.W.3d at 346.

The Texas long-arm statute provides that a nonresident does business in this state if the nonresident:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

A defendant's contacts with a forum state can give rise to either specific or general jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 592 U.S. 351, 358 (2021). Specific jurisdiction exists when the claims involved in the litigation relate to or arise from the nonresident defendant's contacts with the forum state. *Id.*

at 359; *see also M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017). General jurisdiction "involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *M & F Worldwide Corp.*, 512 S.W.3d at 885 (citing *PHC-Minden, LP v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (general jurisdiction requires that defendant's contacts with forum state be so continuous and systematic as to render defendant "essentially at home in the forum [s]tate").

The Sanchezes asserted only that Jiangsu was subject to specific jurisdiction. "A Texas court may exercise specific personal jurisdiction when the defendant purposefully avails itself of the privilege of conducting activities within the forum state and the plaintiff's claims arise out of or relate to those forum contacts." *Hyundam Indus. Co., Ltd. v. Swacina*, 716 S.W.3d 167, 173 (Tex. 2025) (cleaned up). There must be a substantial connection between the defendant's purposeful contacts with the forum and the operative facts of the litigation. *LG Chem. Am.*, 670 S.W.3d at 347; *see Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). "[M]ere injury to a forum resident is not a sufficient connection to the forum." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 42 (Tex. 2016).

When considering whether the defendant purposefully availed itself of Texas, we consider "only the defendant's contacts with the forum . . ., not the unilateral activity of another party or a third person." *Hyundam Indus. Co.*, 716 S.W.3d at 173 (quoting *Moki Mac*, 221 S.W.3d at 575). Under the stream-of-commerce-plus theory, on which the Sanchezes rely, "specific jurisdiction exists if the defendant places goods into the stream of commerce 'with the expectation that they will be purchased by consumers in the forum state.'" *Luciano*, 625 S.W.3d at 13 (quoting *Moki Mac*, 221 S.W.3d at 577). But the "act of placing a product into the stream of commerce does not establish purposes availment *unless* there is additional conduct evincing an intent or purpose to serve the market in Texas." *BRP-Rotax GmbH & Co. v. Shaik*, 716 S.W.3d 98, 105 (Tex. 2025) (cleaned up, emphasis in original).

A defendant's awareness of its product's sale or distribution in Texas, standing alone, does not create minimum contacts that support the exercise of personal jurisdiction. *Hyundam Indus. Co.*, 716 S.W.3d at 173; *see also Luciano*, 625 S.W.3d at 13 (explaining that defendant must target Texas; "it is not enough that the defendant merely foresees [its] product ending up there"). Such additional conduct may include, for example, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*

*Metal Indus. Co., Ltd. v. Super. Court of Cal.*, 480 U.S. 102, 112 (1987); *see also Shaik*, 716 S.W.3d at 105 (describing examples of "additional conduct" to establish purposeful availment); *Luciano*, 625 S.W.3d at 10 (plus-factor conduct may include "advertising in the forum state, soliciting business through sales persons, or creating, controlling, or employing the distribution system that brought the product into the forum state." (citations omitted)).

Thus, to show purposeful availment, proof of "random, fortuitous, or attenuated" contacts will not suffice, nor will evidence of a third party's unilateral activities. *Hyundam Indus. Co.*, 716 S.W.3d at 173; *Moki Mac*, 221 S.W.3d at 575. The proof must show that the defendant sought "some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction.'" *Hyundam Indus Co.*, 716 S.W.3d at 173 (quoting *Moki Mac*, 221 S.W.3d at 575) (alterations in original).

The plaintiffs and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *See Moncrief Oil Int'l v. OAO Gazprom*, 414 S.W.3d 142, 149–50 (Tex. 2013); *Kelly v. Gen. Interior Constr.*, 301 S.W.3d 653, 658–59 (Tex. 2010). The plaintiffs bear the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moncrief Oil Int'l*, 414 S.W.3d at 149. If the plaintiffs meet their initial burden, the burden shifts to the nonresident defendant to negate the plaintiffs' alleged bases for jurisdiction. *Id.* The defendant can negate jurisdiction either by disproving the

9

plaintiffs' allegations or by showing that the evidence is legally insufficient to establish jurisdiction, taking the plaintiffs' allegations as true.[1] *Kelly*, 301 S.W.3d at 659.

### No Evidence of Purposeful Availment

Jiangsu asserts that there is insufficient evidence to support specific personal jurisdiction. It maintains that the evidence shows only that it shipped its products to the United States at the direction of Statewide which, standing alone, does not support specific jurisdiction. The Sanchezes noted corporate representative Zhenhong's use of the term "agent" in his deposition testimony to describe Statewide's relationship with Jiangsu.[2] But Zhenhong corrected his deposition testimony in an errata sheet to eliminate his use of the term "agent," and his description of how Jiangsu interacted Statewide does not support the conclusion that a principal-agent relationship existed between Jiangsu and Statewide. *See, e.g.*,

---

[1] Jiangsu argues that the Sanchezes failed to plead that Jiangsu committed a tort in whole or in part in Texas, and thus they failed to meet their initial burden triggering Jiangsu's burden to negate their jurisdictional allegations. We need not resolve this issue because even if the Sanchezes satisfied their initial burden to plead sufficient jurisdictional facts, we conclude the trial court lacked specific jurisdiction over Jiangsu.

[2] The Sanchezes also assert that Zhenhong's declaration was inadmissible because he did not have personal knowledge of Jiangsu's marketing and distribution practices. Because the Sanchezes did not move to strike the affidavit or secure an evidentiary ruling on this issue in the trial court, it is not preserved for our review. *See* TEX. R. APP. P. 33.1(a). Further, the record contains Zhenhong's deposition, in which Zhenhong explains how he acquired knowledge regarding the company's sales activities, and thus supports Jiangsu's special appearance. *See Hyundam Indus. Co. v. Swacina*, 716 S.W.3d 167, 171–72 (Tex. 2025).

*Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 132 (Tex. 2018) (defining characteristic of principal-agent relationship is principal's right to control agent's actions undertaken to further principal's objectives). For instance, the evidence shows that Statewide alone decided where to sell the tires it bought from Jiangsu, and Jiangsu had no interest in where the tires were sold. This arrangement is different from a situation in which a defendant has marketed its products "through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112.

The Sanchezes also relied on the evidence that Jiangsu, at Statewide's direction, shipped its tires to the port of Houston. The details of the sales arrangement, though, do not show that Jiangsu had any intent or purpose to serve the Texas market. As instructed by Statewide, Jiangsu shipped the tires to ports in California and the port of Houston "FOB Shanghai," which meant that title for the tires transferred from Jiangsu to Statewide in China, not Texas. *See Hedaya Home Fashions v. Garden Ridge, L.P.*, No. 01-12-00911-CV, 2013 WL 1284088, at *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2013, no pet.) (mem. op.) (holding no purposeful availment by New York seller where title to goods passed to buyer in New Jersey, not in Texas where the goods ultimately arrived); *see also CMMC v. Salinas*, 929 S.W.2d 435, 436, 439 (Tex. 1996) (no effort to market in Texas or otherwise purposefully avail itself of Texas market by French winepress

manufacturer where independent distributor ordered winepress for Texas buyer and instructed French manufacturer to arrange for winepress to be shipped FOB to port of Houston). Thus, the shipments do not support a finding that Jiangsu intentionally sought to conduct activities in Texas. *See Hedaya Home Fashions*, 2013 WL 1284088, at *5 (explaining that when nonresident defendant structures its transactions to avoid benefits and protections of forum's laws, such as by ensuring that title passes outside forum, legal fiction of consent to personal jurisdiction does not apply) (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002)).

The jurisdictional facts here show that Statewide was solely responsible for any distribution or marketing of Jiangsu's tires in Texas. Jiangsu's mere knowledge that its tires were being sold in Texas is not enough to show that Jiangsu purposefully availed itself of the privilege of doing business in Texas as required to support personal jurisdiction. *See BRP-Rotax*, 716 S.W.3d at 105. For these reasons, we hold that the trial court erred in denying Jiangsu's special appearance.

We sustain Jiangsu's second and third issues.[3]

---

[3] We need not reach Jiangsu's remaining issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the trial court's order denying Jiangsu's special appearance and render judgment dismissing the Sanchezes' claims against Jiangsu for lack of jurisdiction.


Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan