

**NUMBER 13-17-00259-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**CESSNA AIRCRAFT COMPANY
AND TEXTRON AVIATION INC.,**                                    **Appellants,**

**v.**

**JORGE GARCIA, ET AL.,**                                                **Appellees.**

---

**On appeal from the 93rd District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellants Cessna Aircraft Company and Textron Aviation Inc. ("Cessna") appeal

the trial court's denial of their special appearance.[1]  By two issues, Cessna contends that

---

[1] After the accident, Cessna Aircraft Company merged with Textron Aviation Inc.

the trial court erred in denying its special appearance because it is not subject to specific or general personal jurisdiction. We affirm.

## I.      PERTINENT FACTS

This case involves an aviation accident of a Cessna airplane which departed from McAllen, Texas. The accident occurred in Mexico. The aircraft's pilot, co-pilot, and passenger were killed in the accident. Appellees Jorge Garcia, et al., several family members of the deceased individuals (the "Family Members"), sued, among others, Cessna for damages arising from the accident.[2]

Cessna is a Kansas corporation that manufactured the aircraft in Kansas using parts that came from other states. The engine came from Pennsylvania. The engine's crankshaft came from Ohio, but the metal was forged in Texas. A faulty crankshaft is believed to be the cause of the engine's failure on the day of the accident.

After its manufacture in Kansas, the aircraft was sold to a dealer in Florida, then repossessed and sold to a dealer in Iowa, and finally sold to a resident of Mexico. Consequently, the aircraft in this case was not sold to a Texas resident. However, Cessna openly admits to carrying on marketing and sales activities in Texas. For example, Cessna regularly sells aircraft to Texas residents; it currently owns and operates service centers in San Antonio and Houston; and it derived $246,943,492 in total sales out of Texas between 2013 and 2015. Aside from owning and operating service centers in San

---

[2] Some of the Family Members were plaintiffs and others were interveners. We have relied on the pleadings of both groups for purposes of our analysis. The Plaintiffs included: Jorge Garcia, Individually and on behalf of the Estate of Abraham Garcia, deceased, Luis Rogelio Puente Martell, Individually and on behalf of the Estate of Luis Rogelio Puente Villela, deceased, Olivia Miriam Villela Ortiz, Individually, and Daniella Barajas Individually and on behalf of the Estate of Aureliano Barajas, Antonio Barajas, Individually. The interveners included: Jeanetta Izela Garcia Fassion, Individually and as personal representative of the Estate of Aureliano Barajas, deceased and as next friend of Areliano Barajas Garcia, a minor, Individually, and Andres Barajas Garcia, a minor, Individually.

Antonio and Houston, Cessna also contracts with fifteen independently owned service centers in Texas. These service centers are required by contract to represent themselves as authorized service facilities for Cessna aircraft.

McCreery Aviation, based in McAllen, is one such service center for Cessna aircraft. McCreery serviced and fueled the aircraft prior to its departure on the day of the accident in 2015. Robert McCreery testified that as a Cessna authorized service center, McCreery Aviation also serviced the aircraft in 2013, when it used Cessna parts and worked on the crankshaft seal, installing new Cessna O-rings.[3]

In their live pleading, pertinent to jurisdiction, the Family Members claimed that:

> [Cessna] sells aircraft to residents in the State of Texas that have engines manufactured by Avco/Lycoming. Therefore, the finished product of Avco/Lycoming and the aircraft manufactured by [Cessna] are placed into the stream of commerce by [Cessna].
>
> . . . .
>
> [Cessna] owns and/or operates service centers in the State of Texas. These service centers repair, maintain and service Cessna aircraft. These service centers sell Cessna parts. McCreery Aviation Co., Inc. is authorized to perform maintenance on Cessna single and multi-engine aircraft. And, McCreery Aviation Co., Inc. is an authorized Cessna single and multi-engine parts dealer and McCreery made repairs to the subject plane prior to this accident and used Cessna parts that McCreery had purchased from Cessna. Further, [Cessna] has mobile service units that can and have been dispatched to the State of Texas.
>
> . . . .
>
> McCreery, in order to act as a service center for [Cessna], receives technical publication, service bulletins, service letters, service instructions and other documents from . . . [Cessna] for use in their business of maintaining Cessna aircraft . . . engines.
>
> . . . [Cessna] put products into the stream of commerce knowing that they will reach Texas. And . . . [Cessna] engage[d] in additional contacts,

---

[3] The crankshaft at issue was manufactured by Lycoming.

after placing their products into the stream of commerce into Texas, with the intent to serve the Texas market. These contacts include, but are not limited to, (1) service centers, (2) mobile service units, (3) sales of parts, (4) maintaining/repairing or servicing aircraft or engines, (5) advertising in Texas, (6) websites, (7) channels of communication with Texas residents and service centers, and (8) entering into contracts and agreements.

. . . .

[Cessna has] intentionally targeted Texas as a marketplace for their products. They have taken advantage of the benefits in order to purposely avail themselves for profit in Texas. All of their contacts . . . and the causes of action in this matter arise from or relate to all of [Cessna's] contacts in the State of Texas.

. . . .

At all relevant times hereto, the evidence will show that Cessna and Textron/Cessna, as part of its operating agreement with Defendant McCreery, had the right to pull random inspection of McCreery's facilities in order to assure Cessna that McCreery maintained and operated their facilities to Cessna's standards. Under the operating agreement, Cessna could also inspect and audit Defendant McCreery's financial books and records to assure that the Cessna Authorized Sales and Service Center maintained the highest standards in financial integrity, especially when the Cessna name was tied to and intertwined with McCreery Aviation, and its operating and marketing practices.

The Family Members also alleged that Cessna manufactured and marketed the component parts of the plane. The Family Members stated that McCreery performed maintenance and repairs to the plane in 2014 and in 2015. Specifically, in their response to Cessna's special appearance motion, the Family Members alleged that the accident was caused by the plane's faulty crankshaft, which "was the subject of at least two Cessna service bulletins. . . ."

Cessna filed a special appearance that the trial court denied. This appeal followed.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

4

Texas courts have personal jurisdiction over a nonresident defendant only if it is authorized by the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West, Westlaw through 2017 1st C.S.). The Texas long-arm statute sets out several activities that constitute "doing business" in Texas; however, the list is not exclusive, and Texas's long-arm statute's "broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the [Texas] long-arm statute." *BMC Software Belg.*, 83 S.W.3d at 793. Once this burden is satisfied, to challenge personal jurisdiction, the defendant must file a special appearance negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belg.*, 83 S.W.3d at 793; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.).

Cessna does not challenge that the Family Members met their initial burden regarding specific jurisdiction. Thus, to have prevailed on its special appearance, Cessna must have negated the Family Members' allegations that (1) Cessna had minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities

5

in Texas and (2) Cessna's potential liability arose from or was substantially connected to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Minimum contacts may be found when the nonresident defendant purposefully avails himself of the privileges and benefits inherent in conducting business in the forum state. *Moki Mac*, 221 S.W.3d at 575 ("[A] defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction.") (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (2005)); *see Burger King Corp.*, 471 U.S. at 474–75. We consider three factors when determining whether the nonresident defendant purposefully availed itself of the privilege of conducting activities in Texas: (1) the defendant's own contacts with Texas, and not the unilateral activity of another party; (2) whether the defendant's actions were purposeful rather than random, attenuated, or fortuitous; and (3) whether the defendant sought some benefit, advantage, or profit by availing himself of the jurisdiction. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013). Our minimum contacts analysis focuses on the "quality and nature of the defendant's contacts, rather than their number." *AM Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "The United States Supreme Court has specified that a nonresident's contacts are not unilateral or random and fortuitous when the defendant 'has created continuing obligations between himself and residents of the forum,' which shields the nonresident with the benefits and protections of the forum's laws." *Moncrief Oil*, 414 S.W.3d at 151.

6

Whether the trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belg.*, 83 S.W.3d at 794. Thus, we review the trial court's ruling on a special appearance de novo. *Id.* If the trial court does not issue findings of fact and conclusions of law, we must imply all facts necessary to support the judgment if those facts are supported by the evidence, and we presume that the trial court resolved all factual disputes in favor of its ruling. *Id.* at 795 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984)); *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Am. Type Culture Collection*, 83 S.W.3d at 805–06). The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. Tex. R. Civ. P. 120a(3).

## III. DISCUSSION

By its first issue, Cessna contends that it is not subject to specific jurisdiction in Texas. It argues specifically that the "stream of commerce" theory is not a basis for specific jurisdiction, a failure to warn McCreery is not a basis for specific jurisdiction, and there are no other contacts with Texas upon which to base specific jurisdiction.

However, Cessna did not negate the allegations that it sold its products in Texas, has service centers in Texas, maintains/repairs or services aircraft and engines in Texas, and advertises in Texas. In addition, Cessna did not negate that it had contracted with McCreery in Texas to sell engine parts and to service Cessna airplanes. Moreover, Cessna did not negate that it sought the benefit of profiting from its sale of airplanes and

7

airplane parts in Texas. Cessna's contacts with Texas were neither unilateral activities nor random and fortuitous. Cessna purposefully availed itself of the privileges and benefits inherent in conducting business in Texas. *See Moki Mac*, 221 S.W.3d at 575.

We agree with Cessna that placing a product into the stream of commerce without more does not fulfill the minimum contacts required for specific jurisdiction. *See CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex. 1996). However, Cessna does not simply sell its airplanes in another state and by some unpredictable happenstance those airplanes make their way into the Texas market. *See id*. (citing *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 1034–35 (1987) (finding no minimum contacts where the nonresident defendant's "products were regularly sold in California" and did not "regularly find [their] way to Texas")). On the contrary, the evidence presented by the Family Members shows that Cessna has put its airplanes into the stream of commerce with the expectation that those airplanes will be purchased by consumers in Texas. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006) (quoting *World–Wide Volkswagen*, 444 U.S. at 298). Cessna engaged in additional conduct that indicates its purpose to serve the Texas market by advertising in Texas, establishing Cessna maintenance and repair centers in Texas, and selling its airplanes and parts in Texas through Cessna dealers. *See CMMC*, 929 S.W.2d at 438; *see also Griffin v. Ford Motor Co.*, No. A-17-CA-00442-SS, 2017 WL 3841890, at *3 (W.D. Tex. Sept. 1, 2017). Accordingly, we conclude that the trial court properly found that Cessna had the requisite minimum contacts with Texas under specific jurisdiction analysis.

Now, we must determine whether the Family Members' claim arises from or relates to Cessna's contacts with Texas; stated another way, we must determine whether there

8

is a "substantial connection between [the] contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585; *see also Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, ⸺ U.S. ⸺, 137 S.Ct. 1773, 1780 (2017) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (internal quotations omitted). The Family Members alleged that the accident was caused by a defective crankshaft that was part of the airplane's engine. The Family Members alleged that Cessna contracted with McCreery to provide maintenance and repair to the Cessna airplane involved in this accident. The Family Members alleged that the airplane's defective crankshaft was purchased in Texas and installed in Texas. Cessna has not negated these facts. We conclude that because the alleged defective crankshaft was marketed, sold, and installed in Texas, and Cessna's activities of selling its parts in Texas are related to the Family Members' claim that the defective crankshaft caused the accident, the trial court properly found that there is a substantial connection between Cessna's contacts and the operative facts of the litigation. *See id.*; *see also Bristol-Myers Squibb Co.*, ⸺ U.S. at ⸺, 137 S.Ct. at 1780; *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (explaining that for there to be specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum). We overrule Cessna's first issue.[4]

#### IV. CONCLUSION

We affirm the trial court's judgment.

---

[4] In its order denying Cessna's special appearance, the trial court stated that it had not reached Cessna's argument that there is no general personal jurisdiction. *See* TEX. R. APP. P. 33.1 (requiring for a party to obtain a ruling or object to the trial court's refusal to rule). Nonetheless, having found specific jurisdiction, we need not address whether there is general jurisdiction as it is not dispositive. *See id.* R. 41.7.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice


Delivered and filed the
19th day of December, 2018.